[No. E009941. Fourth Dist., Div. Two. Sept. 16, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN CHRISTOPHER WHITEHURST, Defendant and Appellant.

## COUNSEL

Patricia O'Neill Mitchell, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pat Zaharopoulos and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—Defendant was charged with two counts of inflicting corporal punishment on a child resulting in a traumatic condition (Pen. Code,[1] § 273d), the first count involving Natalie P. and the second count Stephen W. After a jury trial, he was convicted of misdemeanor battery (§ 242) on count I and was acquitted on count II. Imposition of sentence was suspended and defendant was placed on three years' probation.

On appeal he raises three instructional errors: (1) the court erred in failing to instruct sua sponte on a parent's right to discipline a child; (2) the court erred in failing to instruct on the lesser included offense of misdemeanor child beating (§ 273a, subd. (2)); and (3) the court erred in instructing on prior bad acts. We find merit to the first contention and therefore reverse.

### FACTS

On the morning of September 26, 1990, defendant and his wife, Donna Whitehurst, were sitting at the table in their home in Murrietta discussing custody arrangements regarding defendant's natural son, Stephen. Donna

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

was planning on taking Stephen as well as Donna's five children from a prior marriage and leaving defendant.

While they were discussing custody of Stephen, Natalie, defendant's stepdaughter, age nine, came running into the house and approached the table to interrupt Donna and defendant for the fifth time. As Natalie approached, defendant backhanded her, hitting her in the rib cage on her left side. Natalie fell and cried.

Before Donna left her house with the children, she called her cousin, Dorothy McGill in Sacramento, and asked her if she could stay with her for a few days. Donna told Mrs. McGill that defendant had hit Natalie and had kicked Stephen. When Mrs. McGill agreed to Donna's visit, Donna took the children and drove to Sacramento.

Donna and the children arrived in Sacramento that evening. Mrs. McGill noticed that Natalie was guarding her ribs with her arms but Natalie refused to let Mrs. McGill look at her ribs. Mrs. McGill further noticed a bruise on Natalie's left arm between her shoulder and her elbow. Mrs. McGill also noticed that Stephen had a bruise on his stomach.

On September 27, 1990, Mrs. McGill called child protective services in Sacramento and reported the incident. On October 1, 1990, Donna returned to defendant with the children. Before leaving, Natalie told Mrs. McGill that she did not want to go back to Southern California because she was afraid defendant might hit her again.

Mrs. McGill also testified that defendant had called her twice in January of 1991 before the preliminary hearing, threatening to "come and get her" if she did not drop the charges.

On November 19, 1990, Detective Williams of the Riverside Sheriff's Department interviewed Donna in follow-up to the report of child abuse. Donna told him that defendant abused the children physically, verbally and emotionally. She told him that on September 26, defendant struck Natalie in the chest, knocking her out of a chair. Donna further told the detective that Natalie's ribs were sore after the blow.

On November 20, 1990, Donna again told the detective that defendant slapped, hit and kicked the children but this time claimed that it was their own fault.

At trial, Donna said that defendant hit Natalie because she was interrupting them. She denied that defendant knocked Natalie out of a chair. She said

she had lied previously because she was mad at defendant. Donna also testified that she was standing next to defendant when he called Mrs. McGill in November and did not hear defendant threaten Mrs. McGill.

Defendant admitted backhanding Natalie but claimed that he did not hit her very hard. He said he hit her because she continued interrupting Donna and defendant although she had been told to stay outside. He denied kicking Stephen.

Riverside child protective services worker, Ranee McNeill, saw no bruises on any of the children on November 20, 1990.

### PARENT'S RIGHT TO DISCIPLINE

Defendant contends the trial court had a sua sponte duty to instruct the jury regarding a parent's right to discipline his child. We agree.

As respondent concedes, "[i]t is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. (*People* v. *Castillo*, 70 Cal.2d 264, 270-271, fn. 5 . . . ; *People* v. *Henderson*, 60 Cal.2d 482, 489-490 . . . ; *People* v. *Jackson*, 59 Cal.2d 375, 380 . . . ; *People* v. *Putnam*, 20 Cal.2d 885, 890 . . . ; *People* v. *Warren*, 16 Cal.2d 103, 116-117 . . . .) The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. (*People* v. *Wilson*, 66 Cal.2d 749, 759 . . . ; *People* v. *Wade*, 53 Cal.2d 322, 334 . . . .)" (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913], overruled on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) Respondent also concedes the court is further obligated to instruct on defenses if it appears the defendant is relying on the defense or if there is substantial evidence to support the defense and it is not inconsistent with defendant's theory of the case. (*Sedeno, supra*, at p. 716.)

Respondent argues however that the court was not obligated to give instructions on the right to discipline because (1) "appellant's parental right to discipline his children was not necessary to the jury's understanding"; (2) the right is "self-evident"; and (3) "it did not appear that appellant was primarily relying on such a defense." We cannot agree with any of these positions.

Defendant's theory of the case as presented from not only his testimony but that of his wife and his stepdaughter as well was that he simply was

disciplining Natalie for continuing to interrupt and that he did not hit her very hard. Respondent attempts to split the defense theory of the case into two separate defenses: first and primarily that Natalie did not suffer any traumatic condition, and second, that he was simply disciplining the child. We do not believe the issue of parental right to discipline can be separated in this fashion.

A parent has a right to reasonably discipline by punishing a child and may administer reasonable punishment without being liable for a battery. (*Emery* v. *Emery* (1955) 45 Cal.2d 421, 429 [289 P.2d 218]; *People* v. *Stewart* (1961) 188 Cal.App.2d 88, 91 [10 Cal.Rptr. 217].) This includes the right to inflict reasonable corporal punishment. (*People* v. *Curtiss* (1931) 116 Cal.App. Supp. 771, 775 [300 P. 801].)

However, a parent who willfully inflicts *unjustifiable* punishment is not immune from either civil liability or criminal prosecution. (*People* v. *Stewart, supra,* 188 Cal.App.2d 88, 91; *People* v. *Curtiss, supra,* 116 Cal.App. Supp. 771, 777.) As explained in *Curtiss,* corporal punishment is unjustifiable when it is not warranted by the circumstances, i.e., not necessary, or when such punishment, although warranted, was excessive. (116 Cal.App. at p. Supp. 780.) "[B]oth the reasonableness of, and the necessity for, the punishment is to be determined by a jury, under the circumstances of each case." (*Id.,* at p. Supp. 777.)

Thus as these cases make clear, whether the corporal punishment falls within the parameters of a parent's right to discipline involves consideration of not only the necessity for the punishment but also whether the amount of punishment was reasonable or excessive. Reasonableness and necessity therefore are not two separate defenses but rather two aspects of the single issue of parental right to discipline by physical punishment. Thus we reject respondent's claim that the trial court was excused from instructing on the right to discipline because it was not defendant's "primary" defense.

Nor can we accept respondent's contention that instruction on this issue was not necessary to the jury's understanding of the case. As we see the issue it was of critical importance to the jury's understanding of the case. Here there was no dispute that defendant hit Natalie, and the only real issue in this case was whether the punishment was necessary and, if so, whether it was reasonable. Yet the jury received no guidance on this issue.

For the same reason we cannot accept respondent's conclusion that the right was self-evident. Instructions are given on the relevant law simply because we do not presume a jury composed of lay persons is knowledgeable in the law. Here the jury admittedly may have known that some parents do

use corporal punishment to discipline a child without incurring either civil or criminal liability while others are subject to liability. But we cannot presume the jury knew when corporal punishment is lawful (and therefore a complete defense), or when it becomes a misdemeanor battery or when it forms the basis of a felony offense. Nor can we presume the jury knew that a parent's subjective belief that the punishment was necessary and reasonable and, therefore, justifiable does not preclude the jury from objectively determining that the punishment was either unnecessary or excessive.

We therefore conclude the court erred in not instructing on the scope of a parent's right to discipline by corporal punishment and the jury's duty to objectively evaluate defendant's conduct to determine whether the punishment was justified.[2] ■ We cannot conclude the error was harmless.

Because of the failure to instruct on parental discipline and particularly in light of the other instructions given, there is a reasonable probability the jury convicted defendant solely because he struck Natalie and without ever considering whether the punishment was unjustified. We note in particular the definition of "force and violence" (CALJIC No. 16.141 (5th ed. 1988)) which was given. This instruction advised the jury: "As used in the foregoing instruction [misdemeanor battery], the words 'force' and 'violence' are synonymous and mean any unlawful application of physical force against the person of another, even though it causes no pain or bodily harm or leaves no mark and even though only the feelings of such person are injured by the act. *The slightest unlawful touching, if done in an insolent, rude, or an angry manner, is sufficient.* [¶] It is not necessary that the touching be done in actual anger or with actual malice; it is sufficient if it was unwarranted and unjustifiable. [¶] The touching essential to a battery may be a touching of the person, of the person's clothing, or of something attached to or closely connected with the person."[3]

Thus, rather than being informed that necessary and reasonable corporal punishment is permissible and will not subject defendant to criminal liability, the jury was advised that "the slightest unlawful touching" is sufficient to constitute a battery. With this instruction and without any instructions on the right to use corporal punishment as discipline, including the issues of

---

[2]In finding the trial court had a sua sponte duty to instruct on this issue, we do not intend to minimize defense counsel's responsibility for this error. In light of defendant's version of the incident, we can think of no reasonable explanation for not seeking instruction on the right to use corporal punishment as discipline. With defendant's admission he struck the child, the *only* route to acquittal was through defendant's right to discipline. There is no conceivable tactical reason for not requesting additional instructions on this defense and the failure to do so can only be characterized as ineffective assistance of counsel.

[3]This instruction was given at defense counsel's request. (See fn. 2, *ante.*)

necessity and reasonableness, a guilty verdict was virtually compelled in light of defendant's admission that he hit Natalie. The failure to instruct on the right to discipline was prejudicial.[4]

DISPOSITION

Judgment reversed.

Timlin, J., and McKinster, J., concurred.

---

[4]In light of our reversal on this ground, it is unnecessary to address defendant's other contentions. We note, however, that defense counsel had originally requested instruction on misdemeanor child abuse (CALJIC No. 16.170) and subsequently withdrew the request. Similarly the instruction on evidence of other crimes committed by defendant (CALJIC No. 2.50) was given at defense counsel's request.