Filed 4/23/14 On rehearing

*CERTIFIED FOR PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.P., A Person Coming Under the Juvenile Court Law. | B247977 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>DIAMOND P.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK97013) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Albert J. Garcia, Juvenile Court Referee.  (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

        Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

        Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

Diamond P. (mother) challenges the juvenile's court's jurisdictional finding that her two-year-old daughter, D.P., suffered serious physical harm or was at substantial risk of suffering serious physical harm inflicted nonaccidentally by mother. Mother contends that there was no substantial evidence showing that she abused D.P. or that D.P. was at risk of abuse by mother. We disagree and affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

D.P. was born in May 2011. Mother lived with Matthew F. (father) at paternal great-grandmother's house until D.P. was seven or eight months old. At that time, mother and father separated, but maintained joint custody over D.P. D.P. moved from one parent's home to the other, staying with each parent for one to two weeks at a time.

On December 14, 2012, mother dropped D.P. off at father's home after a two week stay. When D.P.'s hat and jacket were removed, father and great-grandmother noticed that D.P. had bruises on her face, bruising and scab wounds that looked like bite marks on her shoulders and chest area, and a swollen eye. Father called the police and D.P. was taken to the hospital. D.P. was diagnosed as having a "scalp hematoma" that was "most likely caused by trauma." Two doctors at the hospital said that the trauma was most likely non-accidental.

The police reported the case to the Department of Children and Family Services (Department), and the Department interviewed mother. Mother said she did not know how D.P. suffered the head injury, but denied that D.P. had fallen or hit her head against anything. She said the marks on D.P.'s body were caused by other small children who

2

bit her at a party. Mother further stated that during the two weeks D.P. was with her, only mother and her roommate took care of the child.

The social worker also interviewed mother's boyfriend, who lived with her, and mother's cousin. The boyfriend denied having caused D.P.'s injuries, but admitted to using cocaine, marijuana and methamphetamines. Mother's cousin said that both mother and her boyfriend smoked marijuana frequently. The cousin believed mother was also using other illicit drugs because mother had recently " 'dramatically lost weight' " and her behavior had changed: mother had recently stopped seeing her family, and mother's boyfriend appeared to be "controlling her." The cousin further said she had noticed that D.P.'s cheeks were bruised and her ears swollen, but when she asked mother what happened, mother ignored her questions.

On December 19, 2012, the Department filed a petition under Welfare and Institutions Code[1] section 300, subdivisions (a)[2] and (b),[3] alleging that D.P.'s injuries "would not ordinarily occur except as the result of deliberate[,] unreasonable and neglectful acts by the mother," that mother failed to obtain timely necessary medical treatment for D.P., that mother had a history of illicit drug use and currently used

---

[1]     All future statutory references are to the Welfare and Institutions Code.

[2]     Section 300, subdivision (a) provides that a child comes within the jurisdiction of the juvenile court when the child has suffered "serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian."

[3]     Section 300, subdivision (b) provides a basis for juvenile court jurisdiction when the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness as a result of the parent's failure to adequately supervise or protect the child.

marijuana, and that mother endangered D.P. by allowing her boyfriend, who abused illicit drugs, to have unlimited access to the child. The court detained D.P., and released her to father.

In the Jurisdiction/Disposition Report, the Department reported the results from its recent interviews with mother and other family members. Mother continued to maintain that she did not know how D.P. had been injured. However, mother acknowledged that she had noticed D.P.'s cheek was swollen, and opined that "maybe she hit her head on the car seat when I was driving." Father said that he did not think mother had injured D.P., but that she "might be covering up for [her boyfriend] . . . ." Paternal great-grandmother and her boyfriend also said that they did not think mother had injured D.P.

The Department also reported to the court the results of Dr. Janet Clark's review of D.P.'s medical records. Dr. Clark concluded that the marks on D.P.'s body were "consistent with adult bite marks" and that the "most likely explanation" for the "extensive swelling . . . to the entire left side of the head" was "non-accidental or inflicted trauma." On February 28, 2012, the court sustained the jurisdictional findings under section 300, subdivisions (a) and (b), and ordered mother to participate in individual counseling to address issues of parenting, drugs, and domestic violence. Mother timely appealed.

## CONTENTIONS

Mother contends that there was no substantial evidence supporting the juvenile court's finding that D.P. had suffered, or there was a substantial risk D.P. would suffer, serious physical harm inflicted nonaccidentally by mother.

## DISCUSSION

1.     *Standard of Review*

"We review the juvenile court's jurisdictional findings for sufficiency of the evidence.  [Citations.]"  (*In re David M.* (2005) 134 Cal.App.4th 822, 828.)  "In so doing, we consider the evidence favorably to the prevailing party and resolve all conflicts in support of the trial court's order.  [Citation.]  'Substantial evidence' means evidence that is reasonable, credible and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case.  [Citation.]"  (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1401.)

2.     *The Merits of Mother's Appeal Should Be Addressed*

Mother appeals the juvenile court's finding under section 300, subdivision (a), and does not challenge the court's alternative bases for jurisdiction under section 300, subdivision (b).  The Department argues that the appeal is moot because "[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate.  [Citations.]"  (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the [juvenile] court's finding of jurisdiction over the minor if any one of the statutory

5

bases for jurisdiction that are enumerated in the petition is supported by substantial evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)  However, we may also exercise our discretion to reach the merits of a challenge to any jurisdictional finding when the finding may be prejudicial to the appellant, and here, the finding that mother intentionally hurt her daughter has the potential to impact future dependency proceedings.  (*In re D.C.* (2011) 195 Cal.App.4th 1010, 1015.)

3.     *There Was Substantial Evidence That D.P. Was a Child Described By Section 300, Subdivision (a)*

Section 300, subdivision (a), provides for jurisdiction when the child suffered or is at substantial risk of suffering "serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian."  Mother does not dispute that the evidence established that D.P.'s injuries were nonaccidental, but contends that there was no substantial evidence that mother intentionally inflicted those injuries or would do so in the future.

According to mother, she and her roommate were the only people that took care of D.P. during the period when D.P. sustained her injuries.  Yet mother had no plausible explanation for how D.P. had suffered a head trauma.  When mother was questioned by her cousin regarding the injuries, she ignored her cousin.  In addition, when mother was questioned by the social worker, she did not volunteer any plausible circumstances that would suggest that the trauma was accidental, (for example, that she heard D.P. fall in another room and cry out), or that another person was responsible for the injuries (for example, that D.P. presented with these injuries after having spent time with mother's

6

roommate). Mother's suggestion that "maybe [D.P.] hit her head on the car seat" was not consistent with a severe trauma and appeared to be only speculation, not a credible observation.

Mother also had no plausible explanation for the bite marks on D.P.'s body. Although mother claimed that they were inflicted by other children, Dr. Clark found that the marks were consistent with adult bite marks. The undisputed evidence of nonaccidental trauma and mother's failure to explain how D.P. was injured in her care constituted substantial evidence that mother was responsible for inflicting these injuries on D.P.

4. *Section 355.1 Established a Presumption That D.P. Was A Minor Described Under Section 300, Subdivision (a)*

Mother also argues that the court erred to the extent it applied the presumption under section 355.1 that D.P. was a minor described under section 300, subdivision (a). Mother argues that the application of section 355.1 violated her right to due process because she was never given notice that the Department intended to rely on this statute. Mother further argues that the presumption was rebutted by evidence in her favor.

Section 355.1 provides that "[w]here the court finds, based upon competent professional evidence, that an injury, injuries, or detrimental condition sustained by a minor is of a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, the guardian, or other person who has the care or custody of the minor, that finding shall be prima facie

evidence that the minor is a person described by subdivision (a), (b), or (d) of Section 300." (Section 355.1, subd. (a).)

Once the petitioner establishes a prima facie case under section 355.1 the burden of producing evidence "shifts to the parents the obligation of raising an issue *as to the actual cause of the injury* or the fitness of the home." (*In re James B.* (1985) 166 Cal.App.3d 934, 937.) "The effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." (Evid. Code, § 604.)

Although mother contends she was never given notice that the Department intended to rely on section 355.1, the petition's allegations under section 300, subdivision (a) borrowed language from section 355.1: the petition alleged that D.P.'s injuries "would not ordinarily occur except as the result of deliberate[,] unreasonable and neglectful acts on the part of the mother . . . . " Those allegations adequately gave mother notice that the Department was relying, at least in part, on the presumption created by section 355.1. (See Seiser and Kumli, Cal. Juvenile Courts Practice and Procedure (2013) § 2.110 [6] [notice that the Department is relying on section 355.1 "can be accomplished by including the applicable language of Welf. & Inst. Code § 355.1 in the petition . . . . "].)

8

The court in *In re A.S.* (2011) 202 Cal.App.4th 237 suggested, to the contrary, that a petition must specifically cite section 355.1 in order to give the parents sufficient notice of the Department's reliance on the presumption. (See *In re A.S., supra,* 202 Cal.App.4th at p. 243 ["When the [petitioner] intends to rely on [section 355.1, subdivision (a)] to shift the burden of production to the parents to show that neither they nor other caretakers caused the child's injuries, it must do so in a clear-cut manner. It should, of course, cite section 355.1, subdivision (a) in the petition along with the applicable subdivision of section 300. [Citation.]" [Italics omitted.])

We decline to follow the reasoning in *In re A.S.* Here, mother does not deny that she was represented by an attorney at all stages of the proceeding. The Department invoked section 355.1 by wording the petition's charging allegations in the language of section 355.1. Mother was informed of the petition's allegations and the evidence the Department intended to rely upon, including that multiple doctors had concluded that D.P.'s trauma was non-accidental. Thus, mother was given adequate notice that the Department intended to rely on section 355.1.

Mother also contends that the presumption was rebutted by evidence in her favor. Specifically, mother argues that evidence that certain relatives did not think mother would have deliberately hurt D.P. was sufficient to rebut the presumption. Even if this evidence was sufficient, any application of the presumption was harmless error.

While the presumption under section 355.1 "disappears upon the introduction of evidence which would support a finding of its nonexistence (Evid. Code, § 604), the trier of fact, here the juvenile court, must still weigh the inferences arising from the

9

[professional's] testimony which gave rise to the presumption against the contrary evidence . . . and resolve the conflict.  [Citation.]" (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547.)  Thus, the juvenile court here was free to accept the inferences arising from the doctors' statements combined with evidence that mother was with D.P. when she was injured, and to refuse to accept those inferences arising from the opinions of relatives.  "Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact.  [Citation.]" (*Ibid.*)  In light of these principles, we find that the evidence was sufficient to support the court's finding under section 300, subdivision (a).

### DISPOSITION

The judgment is affirmed.

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.

10