Filed 11/24/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re D.M. et al., Persons Coming Under the Juvenile Court Law. | B260549<br>(Los Angeles County<br>Super. Ct. No. DK06385) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>JESSICA G.,<br><br>      Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Marguerite Downing, Judge.  Reversed and remanded.

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minors.

* * * * * *

A mother used her hand or a sandal to spank her two children on the buttocks on those "rare" occasions when lesser disciplinary measures proved ineffective, but never hard enough to leave bruises or marks. May a juvenile court conclude mother has inflicted "serious physical harm" within the meaning of Welfare and Institutions Code section 300[1] without first examining whether her conduct falls outside the right of parents, which exists elsewhere in California civil and criminal law, to discipline their children as long as the discipline is genuinely disciplinary, is warranted by the circumstances, and is reasonable (rather than excessive) in severity? (E.g., *People v. Whitehurst* (1992) 9 Cal.App.4th 1045, 1050 (*Whitehurst*).) We conclude that the juvenile court may not. Because the juvenile court's ruling in this case relied on its categorical view that "hitting children with shoes" is "physical abuse" and "not a proper form of discipline," we vacate the court's jurisdictional finding as to mother and remand so that the court may in the first instance apply the reasonable parental discipline doctrine.

### FACTS AND PROCEDURAL BACKGROUND

Jessica G. (mother) has two children, D.M. (born 2007) and J.M. (born 2010). D.M.'s father is Alejandro H. (Alejandro) and J.M.'s father is Guillermo M. (Guillermo). Due to Guillermo's violent behavior towards her, mother emigrated from Mexico in 2012 with both children.

In May 2014, the Los Angeles County Department of Children and Family Services (Department) received a report that mother was yelling at and beating the children. When talking to Department investigators, mother admitted that she would discipline her children by making them do chores, by scolding them verbally, by denying them privileges (such as watching television), and by threatening to spank them. On the "rare" occasions when these techniques did not work, she would spank the children on

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

the buttocks with her bare hand or with a sandal. The children confirmed that mother would occasionally spank them. The spankings were not hard enough to leave marks or bruises: The Department's investigators observed no marks, bruises, welts or scars, and no one the investigator spoke with—from the boys' primary doctor, to their maternal grandmother, babysitter, and school teacher—had ever observed any marks or bruises. Consistent with these reports, D.M. reported that a spanking "[did not] hurt too much."

In June 2014, as the Department was still conducting its investigation, Guillermo offered to babysit the children and mother gave him her address. One evening, Guillermo arrived early so mother could go to her second job and saw a male visitor in the house. Guillermo returned later that evening, enraged, and assaulted and raped mother while the children were present in the home.

The Department thereafter filed a petition asking the juvenile court to assert dependency jurisdiction over D.M. and J.M. pursuant to section 300, subdivisions (a), (b), and (j), on two grounds: (1) Guillermo physically and sexually assaulted mother in the presence of the children and mother failed to protect the children from seeing the violence Guillermo perpetrated upon her; and (2) mother had intentionally inflicted serious physical harm on J.M. by spanking him and thereby put D.M. at substantial risk of similar abuse.

At the jurisdictional hearing, the juvenile court dismissed the allegation that mother failed to protect the children from witnessing her own victimization, but otherwise concluded that jurisdiction was appropriate. The court sustained the allegation involving Guillermo's assault and rape of mother. The court also sustained the allegation based on mother's discipline, finding that mother had spanked the children "on repeat occasions" and reasoning that "hitting children with shoes is not a proper form of discipline, and it's physical abuse." As pertinent to this appeal, the court's dispositional order required mother to attend a support group for victims of domestic violence, to attend parenting classes, and to attend individual counseling.

3

Mother timely appeals. Guillermo did not appeal, and Alejandro has not been involved in these proceedings.

## DISCUSSION

Mother argues that the juvenile court's finding against her is not supported by substantial evidence.

## I. Mootness

The Department first asserts that we need not reach the merits of mother's challenge. Dependency jurisdiction attaches to a child, not to his or her parent. (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) Because jurisdiction over D.M. and J.M. is justified based solely on the unchallenged finding against Guillermo, the Department argues that the juvenile court's jurisdictional findings regarding mother do not affect the court's jurisdiction and should not be reviewed on appeal. (*In re D.P.* (2014) 225 Cal.App.4th 898, 902 (*D.P.*) ["'As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate'"], quoting *In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

Notwithstanding this general principle, we have discretion to reach the merits of a challenge to any jurisdictional finding when that finding may be prejudicial to the appellant (*D.P.*, *supra*, 225 Cal.App.4th at p. 902), such as when that finding "serves as the basis for dispositional orders that are also challenged on appeal" or when that finding "could potentially impact current or future dependency proceedings" (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762). In this case, the juvenile court's finding that mother intentionally inflicted serious physical harm upon J.M. is prejudicial to mother for two reasons. First, a finding that a parent "intentionally hurt her [son] has the potential to impact future dependency proceedings." (*D.P.*, at p. 902.) Second, the finding against mother in this case is the basis for two of the three requirements the court imposed upon her as part of its dispositional order. Although a dispositional order may reach both parents, including a nonoffending parent, the order must nevertheless be "reasonable"

4

and "designed to eliminate [the] conditions that led to the court's [still valid jurisdictional] finding . . . ." (§ 362, subd. (d); *In re Nolan W.* (2009) 45 Cal.4th 1217, 1229.) As applied here, the court's order requiring mother to participate in support counseling for victims of domestic violence is tied to the still-valid jurisdictional finding regarding Guillermo's infliction of that violence. However, the court's order requiring mother to attend parental education and individual counseling are unrelated to her status as the victim of Guillermo's domestic violence and accordingly hinge on the validity of the jurisdictional finding against her.

We will therefore exercise our discretion to reach the merits of mother's challenge.

## II.    Assertion of Dependency Jurisdiction

The juvenile court's jurisdictional finding against mother rests upon three statutory grounds: (1) that "[t]he child"—as alleged, J.M.—"has suffered, or there is a substantial risk that the child will suffer, *serious physical harm* inflicted nonaccidentally upon the child by the child's parent or guardian," under section 300, subdivision (a); (2) that "[t]he child"—as alleged, J.M.—"has suffered, or there is a substantial risk that the child will suffer, *serious physical harm* or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child," under section 300, subdivision (b); and (3) that "[t]he child's sibling"—as alleged, J.M.—"has been abused or neglected, as defined in subdivisions (a) [or] (b) . . . and there is a substantial risk that the child"—as alleged, J.M.'s older brother, D.M.—"will be abused or neglected, *as defined in those subdivisions*," under section 300, subdivision (j). (§ 300, subds. (a), (b) & (j), italics added.) As the italicized language indicates, jurisdiction under these provisions cannot be sustained without a showing that a child either suffered "serious physical harm" or was at serious risk of so suffering.

The question presented in this case is whether a parent's spanking of her children on the buttocks with her bare hand and with a sandal categorically constitutes "serious

5

physical harm" sufficient to invoke dependency jurisdiction under section 300, subdivisions (a), (b) and (j), irrespective of whether the spankings qualify as reasonable parental discipline. As explained below, we conclude that the answer to this question is "no."

In reaching this conclusion, we independently interpret section 300 (*Lee v. California Capital Ins. Co.* (2015) 237 Cal.App.4th 1154, 1165), but review the juvenile court's factual findings for substantial evidence (*In re John M.* (2013) 217 Cal.App.4th 410, 418). In conducting substantial evidence review, we review the evidence in the light most favorable to the juvenile court's findings, and draw all inferences and resolve all evidentiary doubts in favor of those findings. (*Ibid.*)

As a legal matter, the text of section 300, subdivision (a), specifically and expressly provides that "'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury." (§ 300, subd. (a).) Although this proviso limits itself to the "purposes of [] subdivision [(a)]," the exception to dependency jurisdiction for reasonable discipline applies across the board to all of section 300's jurisdictional grounds for two reasons. First, the Legislature chose to use the term "serious physical harm" throughout section 300. "'When a word or phrase is repeated in a statute, it is normally presumed to have the same meaning throughout.'" (*People v. Briceno* (2004) 34 Cal.4th 451, 461.) Second, the Legislature provided, in the paragraph of section 300 following the enumeration of the last statutory basis for dependency jurisdiction, that "[i]t is the intent of the Legislature that nothing *in this section* . . . prohibit the use of reasonable methods of parental discipline, or prescribe a particular method of parenting." (§ 300, italics added.)

What is more, these Legislative declarations in section 300 are consistent with the longstanding principle of California law that "'a parent has a right to reasonably discipline his or her child and may administer reasonable punishment . . . .' [Citation.]"

6

(*Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 86 (*Gonzalez*) [collecting cases]; *Whitehurst*, *supra*, 9 Cal.App.4th 1045, 1050.)  A parent acting within the boundaries of this right cannot be found liable for a tort (*Gonzalez*, at p. 86); guilty of a crime (*Whitehurst*, at p. 1050 [battery]; 80 Ops.Cal.Atty.Gen. 203, 205-206 (1997) [inflicting corporal punishment on a child under Penal Code section 273d, subdivision (a)]); or subject to registration as a child abuser (*Gonzalez*, at pp. 85-86).

Whether a parent's use of discipline on a particular occasion falls within (or instead exceeds) the scope of this parental right to discipline turns on three considerations:  (1) whether the parent's conduct is genuinely disciplinary; (2) whether the punishment is "necess[ary]" (that is, whether the discipline was "warranted by the circumstances"); and (3) "whether the amount of punishment was reasonable or excessive."  (*Whitehurst*, *supra*, 9 Cal.App.4th at p. 1050; *People v. Clark* (2011) 201 Cal.App.4th 235, 250; accord, *Gonzalez*, *supra*, 223 Cal.App.4th at p. 91 ["a successful assertion of the parental disciplinary privilege requires three elements:  (1) a genuine disciplinary motive; (2) a reasonable occasion for discipline; and (3) a disciplinary measure reasonable in kind and degree"]; cf. *Emery v. Emery* (1955) 45 Cal.2d 421, 430 [parent's "wide discretion in the performance of . . . parental functions" does not reach "beyond the limits of reasonable parental discipline"].)

Where parental discipline exceeds these limits, juvenile courts have not hesitated to uphold the assertion of dependency jurisdiction.  Thus, dependency jurisdiction has been sustained when a parent hit her three-year-old on the stomach with a belt, causing deep, purple bruises after he refused to write a letter of the alphabet and sprayed perfume in his eyes (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438-439); when a parent hit her son with a belt and an electric cord 21 times because he was misbehaving, causing bruises and leaving read marks, welts, and broken skin (*In re David H.* (2008) 165 Cal.App.4th 1626, 1645); when a parent struck his daughter, dislocating her shoulder (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433); when a parent struck her son with "hard

7

objects, violently enough to leave black and blue bruises" for unexplained disciplinary reasons (*In re A.E.* (2008) 168 Cal.App.4th 1, 3); when a parent had "physically punished" his daughter by hitting her with an iron pipe on the leg hard enough to cause long-lasting marks, with a broom on the stomach hard enough to cause long-lasting marks, kicking her, hitting her on the hand hard enough to cause bleeding, slapping her in the face, and driving a car away while her upper torso was leaning into the car (*In re N.M.* (2011) 197 Cal.App.4th 159, 162-163, 169 (*N.M.*)); and when a parent, to control his daughters' behavior, repeatedly sprayed them with cold water from a hose, pulled their hair, used ice packs, and also indicated a plan to use "harsher disciplinary techniques" with his son (*In re Cole C.* (2009) 174 Cal.App.4th 900, 916-917). Conversely, where parental discipline is reasonable if viewed through the prism of the above-stated standard, courts have declined to exercise dependency jurisdiction, such as a when a relative slapped a child on the buttocks with an open hand (see *In re Joel H.* (1993) 19 Cal.App.4th 1185, 1201-1202), or when a parent struggled with her daughter and unintentionally caused fingernail injuries to her face and earlobe (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 131-132, 139 (*Isabella F.*)).

The juvenile court asserted dependency jurisdiction in this case on the ground that "hitting children with shoes" on "repeat occasions" "is not a proper form of discipline, and it's physical abuse." Because the court did not consider the genuineness, necessity or reasonableness of mother's use of spanking as a disciplinary measure, the juvenile court's seemingly blanket rule is inconsistent with the law described above. It also treats the implement of punishment (a sandal rather than a hand) as dispositive, which is also not consistent with the law. (Accord, 80 Ops.Cal.Atty.Gen. 203 (1997) ["It is not unlawful for a parent to spank a child for disciplinary purposes with an object other than the hand"]; *Gonzalez*, *supra*, 223 Cal.App.4th at p. 92 ["We cannot say that the use of a wooden spoon to administer a spanking necessarily exceeds the bounds of reasonable parental discipline"].)

The Department defends the juvenile court's categorical ruling. The Department first contends that some of the authority we cite involved the parental right to physically discipline children in the context of child abuse registration (as *Gonzalez* does) or criminal law (as the Attorney General's opinion does), and thereby suggests that this right does not apply in the context of juvenile dependency proceedings. But, as we explained above, the text of section 300 explicitly preserves the right of parents to administer "reasonable" and "reasonable and age-appropriate" discipline. (§ 300.) What is more, we adopt for section 300 the same three-part definition of "reasonable" parental discipline that courts have been consistently applying for decades in every other context in which it arises. Dependency law undoubtedly rests on a unique cluster of policy concerns, but the policy that prompts courts to balance a parent's right in deciding how to raise his or her child against the child's right not to be subjected to unreasonable discipline is not unique to the dependency system.

Relatedly, the Department notes that dependency courts "need not wait until a child is seriously abused or injured to assume jurisdiction" (*N.M.*, *supra*, 197 Cal.App.4th at p. 165), and reasons that the juvenile courts should be empowered to exercise dependency jurisdiction, even when parental discipline is reasonable, because it might later become unreasonable. However, because this reasoning would apply in every case of parental discipline, reasonable or not, it would effectively write the language preserving the right to engage in reasonable discipline right out of section 300. Rewriting statutes is beyond our purview. (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 956 [noting how courts may not "rewrite statutes"].)

Where, as here, the juvenile court applies the incorrect legal standard, we may decline to engage in substantial evidence review and instead remand to allow the juvenile court to apply the correct legal standard. Such a remand is appropriate in this case, where the parties did not adduce—and the juvenile court did not consider—evidence relevant to the genuineness of mother's disciplinary motive, the necessity of her punishment or the

9

reasonableness of its severity.  These issues likely turn on questions of credibility (of both mother and Guillermo) and competency to testify (as to the children), and these are questions the juvenile court is in a far better position to assess in the first instance.

## DISPOSITION

We reverse the jurisdictional finding as to mother only, and remand for further proceedings examining whether mother's conduct falls within her right to reasonably discipline her children.  The judgment is otherwise affirmed.

## <u>CERTIFIED FOR PUBLICATION.</u>

_____, J.
         HOFFSTADT

I concur:

_____, P.J.
    BOREN

*In re D.M.*, B260549

CHAVEZ, J.

I dissent.

The majority frames the issue on appeal as a challenge to the limits of parental use of corporal punishment rather than whether or not substantial evidence supports the juvenile court's jurisdictional finding.[1] The majority further concludes the juvenile court's ruling "relied on its categorical view that 'hitting children with shoes' is 'physical abuse' and 'not a proper form of discipline.'" It is my assessment that there was sufficient substantial evidence before the court below to support the finding of jurisdiction and rather than improperly relying on "its categorical view" the juvenile court instead merely made an observation concerning the evidence upon which it relied in reaching its conclusion.

I also dissent from the majority view that in order to align dependency law with criminal law there should be a further requirement that dependency courts, when determining whether corporal punishment of a child creates even a risk of serious harm, must consider a three-part evaluation of the action taken.

## BACKGROUND

The initial referral to the Department was "that the mother is heard yelling and screaming profanities at the children followed by a sound that resembles hitting." In addition, the older child (D.M., born 2007) was heard pleading with mother to stop beating him. During its investigation the Department initially heard from mother that "she does not hit her children to the point that they plead to stop," that she "has never hurt them or left marks on them," and only threatened to spank the children with her sandal. Later mother admitted to hitting the children with both her hand and her sandals, for which she expressed remorse.

---

[1] Both the majority opinion and this dissent address only the issue of jurisdiction based on mother's striking the child(ren) as it relates to section 300, subdivisions (a), (b) and (j).

In an August 2014 interview with the Department social worker, D.M. stated "My mom hits us sometimes with the sandal and with her hands on our butts. It doesn't hurt too much. When she hits me I get scared of my mom. I can't remember when was the last time she hit me." The same day the younger child (J.M., born 2010) told the social worker "Yes, my mom hits me with a sandal and with her hand. She hits [D.M.] most. She yells at me and I cry." Guillermo (father) told the same social worker that mother "used to hit the kids in Mexico with her sandals" though not to the point where he became "concerned."

The Department sought jurisdiction based on mother striking J.M. and allegations of domestic violence between Guillermo and mother. The petition alleged that the child and his sibling, D.M., were at risk of suffering serious physical harm by their mother. At the jurisdiction hearing, after the attorney for the minor children asked that the petition be amended to reflect mother's "inappropriate physical discipline" based on statements from mother that she hit her children with a shoe, the juvenile court sustained the allegation as it was originally pled. The court noted that "Hitting children with shoes is not a proper form of discipline, and it's physical abuse." The court further observed that mother had done so on "repeat occasions."

## DISCUSSION

### I. Mootness

In *In re C.C.* (2009) 172 Cal.App.4th 1481 (*C.C.*), the juvenile court terminated its jurisdiction over a 12-year-old child following its denial of visitation and conjoint counseling between mother and minor, and issued a family law "exit order" determining custody and visitation. Under these circumstances, Division 7 of our court observed that dismissal of an appeal for mootness should not be automatic, but based on a case-by-case determination. The court then assessed the mother's contention that the finding of detriment upon which the challenged order (denying visitation) was based created the possibility of prejudice in subsequent family law proceedings. The court concluded that though mother's concern was highly speculative, based on all of the circumstances in that

2

complex case, and "in an abundance of caution because dismissal of the appeal operates as an affirmance of the underlying judgment or order [citations]" (*id.* at p. 1489), it would consider the merits of mother's appeal.

*C.C.* was cited, without discussion or analysis by *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015 which was then cited without discussion or analysis by *In re D.P.* (2014) 225 Cal.App.4th 898, 902, as support for the categorical conclusion that an appellate court has discretion to reach the merits of a jurisdictional finding when there is only the most speculative threat of prejudice to the parent whenever there is a finding that the parent intentionally injured a child. Indeed the majority opinion, citing *In re D.P.*, chooses to exercise that discretion, also without the careful case-by-case determination envisioned by the *C.C.* court.

"[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent. [Citations.]" (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) "For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 (*I.A.*).)

A similar situation occurred in the matter of *I.A.* There, the father asked the court to review the evidentiary support only for the juvenile court's jurisdictional findings against him. The *I.A.* court explained:

> "Because he does not challenge the jurisdictional findings involving Mother's drug abuse, however, any decision we might render on the allegations involving Father will not result in a reversal of the court's order asserting jurisdiction. The juvenile court will still be entitled to assert jurisdiction over the minor on the basis of the unchallenged allegations. Further, the court will still be permitted to exercise personal jurisdiction over Father and adjudicate his parental rights, if any, since that jurisdiction is derivative of the court's jurisdiction over the minor and is unrelated to

3

Father's role in creating the conditions justifying the court's assertion of dependency jurisdiction.

"Under these circumstances, the issues Father's appeal raises are '"abstract or academic questions of law"' [citation], since we cannot render any relief to Father that would have a practical, tangible impact on his position in the dependency proceeding. Even if we found no adequate evidentiary support for the juvenile court's findings with respect to his conduct, we would not reverse the court's jurisdictional and dispositional orders nor vacate the court's assertion of personal jurisdiction over his parental rights."

(*I.A., supra*, 201 Cal.App.4th at p. 1492.)

While the father contended that the finding of jurisdiction could have other consequences for him beyond jurisdiction, the *I.A.* court noted "Father has not suggested a single specific legal or practical consequence from this finding, either within or outside the dependency proceedings." (*I.A., supra*, 201 Cal.App.4th at p. 1493.)

However, an appellate court may address the merits of the jurisdictional findings against one parent where "the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763 (*Drake M.*).) In contrast to *I.A.*, the *Drake M.* court decided to consider the merits of the father's appeal, stating:

"Here, the outcome of this appeal is the difference between father's being an 'offending' parent versus a 'non-offending' parent. Such a distinction may have far-reaching implications with respect to future dependency proceedings in this case and father's parental rights. Thus,

4

although dependency jurisdiction over Drake will remain in place because the findings based on mother's conduct are unchallenged, we will review father's appeal on the merits."

(*Drake M., supra*, 211 Cal.App.4th at p. 763.)

In *Drake M.*, the father challenged a single jurisdictional finding against him involving his use of medical marijuana. Because this single jurisdictional finding was the difference between the father being an offending parent versus a non-offending parent, the appellate court addressed the merits of his appeal. The *Drake M.* court noted that DCFS had failed to show that the father was unable to care for his child due to substance abuse. Without more, mere usage of drugs by a parent is not a sufficient basis on which dependency jurisdiction can be found. (*Drake M., supra*, 211 Cal.App.4th at p. 764.) There was no evidence that father had a substance abuse problem or that father was unable to supervise or protect his child. (*Id.* at pp. 767-769.) The jurisdictional finding involving father was therefore reversed. (*Id.* at p. 771.)

Mother, who has been awarded full custody of both minors, argues that this court should address her challenges to the jurisdictional findings involving her. However, there are significant differences between the present matter and the situation in *Drake M.* First, in *Drake M.*, there was a jurisdictional finding against the father involving his occasional use of medical marijuana. In this case the jurisdictional findings involve mother's physical discipline of her child(ren) with a shoe, which the juvenile court found to be unreasonable and age inappropriate. There were also allegations of domestic violence between the parents which were sustained against the father.

Mother argues that we should address the merits of her claim because "the finding . . . serves as the basis for dispositional orders that are also challenged on appeal." (*Drake M., supra*, 211 Cal.App.4th at pp. 762.763.) Here, mother challenges the order requiring her to participate in family maintenance services including parent education,

5

domestic violence counseling for victims, and individual counseling to address case issues.

At disposition the juvenile court has broad discretion to make "all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child." (§ 362, subd. (a); *In re Jasmin C.* (2003) 106 Cal.App.4th 177, 180.) The problem that the juvenile court seeks to address need not be described in the sustained section 300 petition. (See *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006-1008.) In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order. (See *I.A., supra*, 201 Cal.App.4th at p. 1492 ["A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established"].)

At disposition, the juvenile court is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interests of the children. (*In re Rodger H.* (1991) 228 Cal.App.3d 1174, 1183; *In re Christopher H., supra*, 50 Cal.App.4th at pp. 1006-1008.) Instead, the court may consider the evidence as a whole. Here, the evidence showed that mother struck her children with a shoe on more than a few occasions while "yelling and screaming" at them. The evidence also established that mother was a victim of domestic violence. The services ordered were presumably for the benefit of both the children and mother and were made within the authority of the juvenile court.

As for the finding that there was at least a substantial risk that the minors would suffer serious, nonaccidental physical harm at the hand of their mother, there has been no showing of how that finding would prejudice mother in the future. At most there is speculation that she might be prejudiced in some fashion. In sum, under the circumstances of this case, mother has failed to show that this case fits into the narrow exception created by *Drake M.* For this reason, I would decline to address the

6

evidentiary support for the challenged jurisdictional findings. (*I.A., supra*, 201 Cal.App.4th at p. 1492.)

## II.  Substantial evidence of jurisdiction

The majority finds a lack of substantial evidence to support a finding that there is a substantial risk of "serious physical harm" on these facts and then engages in a discussion of parental rights to physically discipline his or her child after asserting that the juvenile court applied an incorrect legal standard.  I view the issue differently.

Under the substantial evidence standard of review we review the entire record, drawing all reasonable inferences in favor of the trial court ruling.  Where a factual finding is not explicit, we must infer that the trial court made every factual finding necessary to support its decision.  (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48.)  We make no credibility decision nor do we weigh the evidence. (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838.)

Jurisdiction is appropriate under section 300, subdivision (a) when "there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent . . . which indicate the child is at risk of serious physical harm . . . [which] does not include reasonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury."

Jurisdiction is also authorized under section 300, subdivision (j) if "[the] child's sibling has been abused or neglected as defined in subdivision (a) . . . and there is substantial risk that the child will be abused or neglected as defined in [that] subdivision[]."

When viewed in the light most favorable to the court's jurisdictional finding, drawing every reasonable inference and resolving all conflicts in favor of the order, does the evidence support the conclusion that repeated striking of a child three years old and

younger, with a shoe, while screaming and yelling at the child, is not reasonable or age-appropriate? I conclude it does.

The evidence before the juvenile court from Guillermo, D.M., J.M. and mother herself, was that mother on repeated occasions over a period of years, used a shoe to strike her young children as a form of discipline. It is axiomatic that small children should not be hit with hard objects, especially to the point of bruising. (See *In re A.E.* (2008) 168 Cal.App.4th 1.) While there was no evidence of bruising or other physical injury, D.M. did express fear of mother when she hit him. It is also clear that "[t]he court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.)

I further dissent from the majority's effort to create a new standard for asserting jurisdiction (§ 300) over a child in the juvenile court by grafting onto dependency proceedings considerations applicable elsewhere in the law. "The goal of dependency proceedings, both trial and appellate, is to safeguard the welfare of California's children. 'The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time.' (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307.) These proceedings are '"designed not to prosecute a parent, but to protect the child."' [Citation.] The best interests of the child are paramount. [Citations.]" (*In re Josiah Z.* (2005) 36 Cal.4th 664, 673.)

The cases relied on by the majority are distinguishable in that they involve not issues of dependency, but the proper recordation of information in the state's Child Abuse Central Index (*Gonzalez, supra*, 223 Cal.App.4th 72) or the duty to instruct a jury of the standard of justifiable force as a defense to a criminal defendant-parent claiming the right to physically punish a child. (*Whitehurst, supra*, 9 Cal.App.4th 1045; *People v. Clark, supra*, 201 Cal.App.4th 235.) It is my position that the focus of these cases is far removed from the concerns of safeguarding a child at risk of potential harm, and should

8

not be used as a means of adding another evaluation to the many tasks required of the dependency courts.

The juvenile court was in the best position to evaluate the parties who were present in court with their counsel and to make findings of fact based on that assessment. The weight that the juvenile court gave to Guillermo's statement and to the statements of all the others is entitled to deference and respect. The juvenile court, in what can fairly be described as a close case, reached the conclusion that these young children were at risk of serious physical harm at the hands of their overworked, single mother who had demonstrated a lengthy pattern of inappropriate discipline of them. Substantial evidence supports that conclusion whether or not it is one that we might have reached if we were deciding the case at the trial court level.

I would affirm the juvenile court jurisdictional order.


_____, J.

CHAVEZ

9