Filed 7/14/23  In re D.P.  CA2/5
Opinion on remand from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re D.P., a Person Coming Under the Juvenile Court Law. | B301135 (Los Angeles County Super. Ct. No. 19CCJP00973B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. T.P. et al., Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Craig Barnes, Judge.  Reversed.

1

Megan Turkat-Schirn, under appointment by the Court of Appeal, for Defendant and Appellant T.P.

Landon Villavaso, under appointment by the Court of Appeal, for Defendant and Appellant Y.G.

Mary C. Wickham, County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

---

## I.   INTRODUCTION

T.P. (Father) and Y.G. (Mother) appealed from the juvenile court's order finding jurisdiction over their now four-year-old son D.P. (the child) under Welfare and Institutions Code section 300, subdivision (b)(1)[1] and order of a period of informal supervision by the Los Angeles County Department of Children and Family Services (Department).  On February 10, 2021, the panel majority dismissed the appeal as moot because the juvenile court terminated jurisdiction over the child during the pendency of the parents' appeals.[2]  On May 26, 2021, the California Supreme Court granted Father's petition for review.  On January 19, 2023, the Supreme Court agreed Father's appeal is moot but remanded for us to reconsider Father's argument for discretionary review of the moot issue in light of the principles and factors set forth in its

[1]   All statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]   Presiding Justice Rubin dissented from the mootness holding.

2

opinion. Having considered the matter in light of the Supreme Court's opinion, we exercise our discretion to review Father's appeal and hold that insufficient evidence supports the juvenile court's jurisdiction order.[3]

## II.    BACKGROUND

The following background is from the Supreme Court's opinion in this case, *In re D.P.* (2023) 14 Cal.5th 266:

"In 2019, Father and Mother brought two-month-old D.P. to the hospital because he had been crying more than usual and seemed to have difficulty breathing. A chest X-ray revealed that D.P. had pneumonia as well as a single healing rib fracture that the parents, surprised by the latter finding, could not explain. A nurse practitioner who treated D.P. and performed a skeletal survey found no evidence of any other trauma or injuries to his body. The Department received a report alleging that D.P. was a victim of physical abuse and stating that his five-year-old sister B.P. might also be at risk. Following treatment for the rib fracture and for unrelated pneumonia and flu, D.P. was released to his parents. At that time, he was gaining weight and seemed happy.

"Father and Mother are immigrants from Vietnam and China, respectively. Their household includes D.P. and B.P., as well as the children's maternal grandparents. The family has no prior child welfare history or criminal history. A social worker who interviewed B.P. found that she appeared healthy and well groomed, and B.P. stated that she felt happy and safe at home.

---

[3]    In light of that holding, we must also, necessarily, reverse the juvenile court's informal supervision order.

The parents were cooperative with social workers and participated in various pre-disposition services including parenting classes and individual counseling. Nonetheless, because the timing of D.P.'s rib fracture meant that it must have occurred sometime after his birth while he was in the care of his parents, and because his parents could not offer a satisfactory explanation for the injury, the Department filed a petition alleging that D.P. was subject to 'deliberate, unreasonable, and neglectful acts' at the hands of his parents, which placed him and his sister 'at risk of serious physical harm, damage, danger, and physical abuse.' The Department claimed the children were at risk of neglect and sought to have them removed from their parents' care.

"In the juvenile court, the Department presented testimony from Dr. Karen Imagawa, an expert in forensics and suspected child abuse. Dr. Imagawa explained that the type of rib fracture D.P. suffered is uncommon in healthy infants and has a 'high degree of specificity for non-accidental/inflicted trauma.' Because a healthy infant's ribcage is pliable, sustaining this type of injury would require significant compression or blunt force trauma. The parents introduced expert testimony from Dr. Thomas Grogan, a pediatric orthopedic surgeon and expert in child abuse forensics. Dr. Grogan explained that rib fractures like the one D.P. suffered are typically caused by compressive force. If a fist or object had been used to strike D.P., causing blunt force trauma, Dr. Grogan stated he would have expected to see multiple broken ribs and potentially some external marks or bruising. Because D.P. only had a fracture to one rib, Dr. Grogan believed the injury could be the result of someone, even D.P.'s five-year-old sister, picking him up incorrectly and applying too much pressure to his chest.

However, Dr. Grogan could not rule out the possibility that the injury was the result of an intentional act. Both experts agreed that in the absence of any bruising, a caregiver would have no way of knowing that a child had a broken rib.

"At the jurisdictional hearing, the juvenile court dismissed the portions of the petition relating to D.P.'s sister because they were not supported by sufficient evidence. With respect to D.P., the juvenile court sustained a modified version of the former section 300, subdivision (b)(1) (former section 300(b)(1)) count, which had alleged that 'deliberate, unreasonable, and neglectful acts on the part of [D.P.'s] mother and father endanger the child's physical health, safety and well-being, create a detrimental home environment and place the child . . . at risk of serious physical harm, damage, danger and physical abuse.'

"By its terms, current section 300, subdivision (b)(1)(A) applies where '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] . . . [t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child.' A related provision, section 355.1, subdivision (a), provides: 'Where the court finds, based upon competent professional evidence, that an injury . . . sustained by a minor is of a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, . . . that finding shall be prima facie evidence that the minor is a person described by subdivision . . . (b) . . . of Section 300.'

"In light of the expert testimony and the force required to cause D.P.'s injury, the juvenile court concluded the injury was of a sort that would generally not be sustained barring some neglect or harm to the child, and it thus found a prima facie case under

5

section 355.1.  This finding "'shift[ed] to the parents the obligation of raising an issue as to the actual cause of the injury'" (*In re D.P.* (2014) 225 Cal.App.4th 898, 903 . . . , italics omitted; see Evid. Code, § 604.)

"The juvenile court explained:  'What I have is an unanswered explanation as to how this fracture occur[red] . . . , but I don't lay [it] at the parents' feet because I don't think they affirmatively through a deliberate act or some act on their part or omission on their part caused the injury.  And it may, in fact, be that while the child is in the care of the maternal grandmother or some other event occurred that was outside of their view that this compression force was applied.'  Further, the court said that 'I think this is—at its most—a possible neglectful act in the way this compression fracture occurred.'  But in light of the section 355.1 presumption, the juvenile court sustained the former section 300(b)(1) count, though it struck the words 'deliberate' and 'unreasonable' because those words are 'beyond what the evidence shows.'  With the count so modified, the court found that D.P.'s injury 'would ordinarily not occur [except] as the result[] of neglectful acts by the child's mother and father . . . [and s]uch . . . neglectful acts on the part of the child's mother and father endanger the child's physical health, safety and well-being, create a detrimental home environment and place the child . . . at risk of serious physical harm, damage, danger and physical abuse.'

"The court ordered D.P. to remain released to the parents under the Department's informal supervision under former section 360, subdivision (b) for a period of six months.  The court noted that the parents had already completed family preservation services; they each completed over five months of weekly individual counseling, and according to their therapists,

both parents demonstrated a good ability to parent their children. Both parents also attended parenting education programming.

"D.P.'s parents promptly appealed the juvenile court's jurisdictional ruling. . . . While the appeal was pending, the parents fully complied with their case plan. The Department did not bring the case back before the juvenile court, and the juvenile court terminated its jurisdiction before the completion of the appeal." (*In re D.P., supra*, 14 Cal. 5th 266, 273–275.) The panel majority of this court held the parents' appeals were moot in light of the court's termination of jurisdiction and declined to exercise discretionary review. (*Id.* at pp. 272, 276.)

## III.  DISCUSSION

### A.  *Discretionary Review*

We have "inherent discretion to decide certain challenges to juvenile court jurisdictional findings, notwithstanding mootness." (*In re D.P., supra*, 14 Cal. 5th at p. 285.) Considering various principles and factors relevant to an appellate court's exercise of discretionary review in dependency appeals, the Supreme Court observed, "[W]here, as here, the case becomes moot due to prompt compliance by parents with their case plan, discretionary review may be especially appropriate. After all, if D.P.'s parents had not completed their supervision requirements in a timely fashion, the juvenile court's jurisdiction might have continued during the pendency of Father's appeal, and no mootness concern would have arisen. It would perversely incentivize noncompliance if mootness doctrine resulted in the availability of appeals from jurisdictional findings only for parents who are less compliant or

7

for whom the court has issued additional orders.  [Citations.] Principles of fairness may thus favor discretionary review of cases rendered moot by the prompt compliance or otherwise laudable behavior of the parent challenging the jurisdictional finding on appeal."  (*Id.* at p. 286.)

In light of the parents' diligent and laudable completion of their case plan, we exercise our discretion to consider the merits of Father's appeal.

B.      *Sufficiency of the Evidence Supporting the Juvenile Court's Jurisdiction Order*

In light of the juvenile court's factual findings, there is insufficient evidence to support the court's jurisdiction order.  As the Supreme Court set forth in its opinion, "The juvenile court explained: 'What I have is an unanswered explanation as to how this fracture occur[red] . . . , but I don't lay [it] at the parents' feet because I don't think they affirmatively through a deliberate act or some act on their part or omission on their part caused the injury.  And it may, in fact, be that while the child is in the care of the maternal grandmother or some other event occurred that was outside of their view that this compression force was applied.'  Further, the court said that 'I think this is—at its most—a possible neglectful act in the way this compression fracture occurred.'"  (*In re D.P., supra*, 14 Cal.5th at p. 275.)

"Possible" evidence is not substantial evidence.  "[A] mere possibility is nothing more than speculation" and speculation does not amount to substantial evidence."  (*People v. Ramon* (2009) 175 Cal.App.4th 843, 851).)  A finding of "a possible neglectful act" is antithetical to substantial evidence of that act.

8

"'To be sufficient, evidence must of course be substantial. It is such only if it "'reasonably inspires confidence and is of "solid value."'"' (*People v. Perez* (1992) 2 Cal.4th 1117, 1133.) "[S]ubstantial evidence is not synonymous with *any* evidence. A decision supported by a mere scintilla of evidence need not be affirmed on appeal. Furthermore, '[w]hile substantial evidence may consist of inferences, such inferences must be "a product of logic and reason" and "must rest on the evidence"; *inferences that are the result of mere speculation or conjecture cannot support a finding*. The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.'" (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393–1394 [citations omitted].)

The juvenile court's factual findings are insufficient to support the court's assertion of jurisdiction over D.P. Accordingly, we reverse the juvenile court's jurisdiction order.

## V.   DISPOSITION

The jurisdiction and informal supervision orders are reversed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM, J.


We concur:



RUBIN, P. J.



BAKER, J.