Filed 6/28/22 In re D.G. CA1/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re D.G., et al., Persons Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DANIEL G., et al., <br><br> Defendants and Appellants. | A162737 <br><br> (Alameda County Super. Ct. Nos. JD032451 & JD032452) |

G.G. (Mother) and Daniel G. (Father) (parents) appeal from the juvenile court's jurisdictional findings under Welfare and Institutions Code section 300, subdivision (e) —severe physical abuse.[1] Parents' sole contention on appeal is that the juvenile court erred in applying a res ipsa loquitur theory of negligence to sustain its jurisdictional finding. We affirm.

## I.

## BACKGROUND

We summarize only the facts necessary to resolve this appeal.

---

[1] Father has joined in all of the arguments mother presented in her opening brief.

D.G. and Ezekiel G. (minors) were the subjects of a dependency petition filed by Alameda County Social Services Agency (agency) under Welfare and Institutions Code[2] section 300, subdivisions (b)(1), (e), and (j). Under subdivision (e), the petition alleged that parents were the sole care providers for five-week-old Ezekiel and two-year-old D.G, and that while in their care, Ezekiel sustained "several unexplained, non-accidental injuries consisting of two abdominal horizontal bruises, bruises on the tip of the index finger, torn inner top lip, bruises on the penis, subdural hematoma, left and right wrist fracture as well as a left corner fracture." The petition further alleged D.G. had sustained "bruises to his left cheek and above his right knee."

The agency's jurisdictional report noted that parents had been married eight years, and had two children, D.G. and Ezekiel. After Ezekiel's birth, mother and father were his only caregivers and they had not had any visitors in the home. The parents had no explanation for Ezekiel's injuries. The report noted that although parents "continuously blame [D.G.] for the injuries Ezekiel has sustained," the medical expert opined that " '[D.G.] could be the cause of maybe one bruise, but it does not explain weeks and weeks of bruising.' "

At the contested jurisdictional hearing, which took place over the course of five months, several witnesses testified. For the agency, the social worker testified, as did Dr. Casey Brown, a medical expert in child abuse pediatrics. Dr. Brown, who treated Ezekiel at Oakland Kaiser pediatric intensive care unit and was the only medical witness to examine Ezekiel in person, testified that he had multiple nonaccidental injuries and that his injuries resulted from physical abuse on more than one occasion. Dr. Brown also opined Ezekiel's injuries were not the result of any underlying medical

---

[2] All statutory references are to the Welfare and Institutions Code.

2

condition (including rickets), birth injury, or D.G. hurting Ezekiel. For the defense, Dr. David Ayoub, a general radiologist expert, and Dr. Steven Gabaeff, an expert in emergency medicine, general medicine, and clinical/forensic medicine, testified. Dr. Ayoub opined Ezekiel suffered from infantile rickets. Dr. Gabaeff testified that Ezekiel's injuries had medical explanations other than child abuse. Mother and Father both testified as well.

The juvenile court found true the allegations of the petition. The court gave a lengthy ruling from the bench with explicit findings on the credibility of each of the witnesses, including parents' expert witnesses. The court observed the case "boil[ed] down to . . . the battle of the experts." The court found Dr. Brown credible, Dr. Gabaeff "not especially credible," and Dr. Ayoub not "specifically credible." Under the totality of the circumstances, including the COVID-19 pandemic, the absence of visitors to the home, and parents being the sole caretakers, the juvenile court concluded that "Ezekiel was physically abused in the home of the parents," and specifically that his parents knew or reasonably should have known the abuse was occurring. The court declared the children dependents of the court, and ordered them removed from parental custody pending the provision of family reunification services.

## II.

## DISCUSSION

Parents' sole contention on appeal is that the juvenile court erred in relying on *In re E.H.* (2003) 108 Cal.App.4th 659 (*E.H.*) and a res ipsa loquitur theory to support its jurisdictional finding under section 300,

subdivision (e) (section 300(e)).[3]  The agency urges us to dismiss the appeal, arguing it fails to raise a justiciable issue.  In the alternative, the agency contends the juvenile court's order was supported by substantial evidence. We conclude that even assuming the appeal is not moot, parents have failed to demonstrate that the juvenile court erroneously employed a res ipsa loquitur theory to sustain its findings.

## A.    *Justiciability*

The agency argues parents fail to raise a justiciable issue for two reasons.  First, parents contest only a single jurisdictional finding of the court (the section 300(e) allegation), without challenging the other bases for jurisdiction.  Second, while this appeal was pending, the juvenile court dismissed the dependency, terminating its jurisdiction.[4]  In light of those orders, the agency urges us to dismiss the appeal as moot.

"It is a fundamental principle of appellate practice that an appeal will not be entertained unless it presents a justiciable issue."  (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489.)  " ' "A judicial tribunal ordinarily may consider and determine only an existing controversy, and not a moot question or abstract proposition. . . . [A]s a general rule it is not within the function of the court to act upon or decide a moot question or speculative, theoretical or abstract question or proposition, or a purely academic question, or to give an advisory opinion on such a question or proposition. . . ." ' " (*Id.* at p. 1490.)

---

[3] Mother expressly concedes she is not challenging the sufficiency of the evidence supporting the juvenile court's jurisdictional finding under section 300(e), nor does her appeal challenge the other bases for jurisdiction under section 300, subdivisions (b)(1) and (j).

[4] Because we will decide the case on the merits, we deny Mother's request for judicial notice of the juvenile court's June 2, 2021, July 1, 2021, and December 21, 2021 minute orders as they are unnecessary to our resolution of the case.

"The termination of juvenile court jurisdiction does not categorically prevent a reviewing court from granting effective relief in all cases. Thus, mootness of an appeal from a juvenile court order followed by the unappealed termination of juvenile court jurisdiction 'must be decided on a case-by-case basis' [citations], and such termination will not moot an appeal if, on the facts of the particular case, the appellate court can still grant the appellant effective relief." (*In re S.G.* (2021) 71 Cal.App.5th 654, 663–664.) Mother argues in her reply brief that we should address the validity of the trial court's jurisdictional finding because it may have some consequence in a future dependency proceeding. Specifically, she argues that the sustained jurisdictional finding under section 300(e) could be the basis for future allegations under section 300, subdivisions (a) and (j), or for application of section 361.5, subdivisions (b)(3) or (b)(6) to bypass reunification services in a future dependency case. Mother also argues we may exercise our discretion to resolve a moot question when there has been actual error in the jurisdictional findings. (See, e.g., *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452.) Finally, citing *In re S.G.,* at pages 664, 668, Mother argues that we can require the juvenile court to correct its erroneous decision by way of the remittitur notwithstanding the termination of dependency jurisdiction. Although we seriously question whether Mother has sufficiently demonstrated justiciability, in light of the possibility parents would be affected in a future proceeding and out of an abundance of caution, we will exercise our discretion to consider the merits.

## B. The Juvenile Court Did Not Err By Relying on a Presumption of Negligence

Parents argue the juvenile court erred when it applied a res ipsa loquitur theory to sustain the section 300(e) allegation.

5

The juvenile court can assert jurisdiction under section 300(e) if it finds by a preponderance of the evidence that (1) the minor is under five, (2) the minor suffered severe physical abuse, and (3) the abuse was by a parent or a person known to the parent if the parent knew or reasonably should have known the person was physically abusing the minor.  (§ 300(e); *E.H., supra,* 108 Cal.App.4th at p. 668; *K.F. v. Superior Court* (2014) 224 Cal.App.4th 1369, 1381–1382.)  Parents do not challenge the sufficiency of the evidence supporting these findings in this case, but argue only that the juvenile court erred in sustaining the section 300(e) allegations based on the same res ipsa loquitur theory employed in *E.H.*

In *E.H.*, an infant sustained multiple bone fractures at different stages of healing ranging from one to six weeks old.  (*E.H., supra*, 108 Cal.App.4th at p. 661.)  The child welfare department filed a dependency petition alleging the child came within the juvenile court's dependency jurisdiction under section 300, subdivisions (a), (b), (e), (i), and (j).  A doctor who examined the child concluded her injuries were likely nonaccidental.  (*E.H.*, at pp. 661–662.)  The mother testified that she lived with several family members, but denied that anyone would hurt the child.  (*Id.* at p. 662.)  The juvenile court found the injuries were intentionally inflicted and were caused by someone in the household, but the evidence did not establish who injured the child.  (*Id.* at pp. 661, 667.)  The juvenile court sustained the petition as to section 300, subdivisions (a), (b), and (j), but dismissed the allegations as to subdivision (e).  (*E.H.*, at pp. 661, 667.)

The child welfare department appealed, asserting a " 'res ipsa loquitur' type of argument" and the appellate court reversed.  (*E.H., supra,* 108 Cal.App.4th at pp. 669, 671, fn. omitted.)  The appellate court noted that there was severe physical abuse (the child's broken bones) and that the child

was never out of her parents' custody. (*Id.* at pp. 669–670.) The court concluded that "[t]he only reasonable conclusion to be drawn from the facts of the instant case was that someone in the home was causing [the child's] injuries, and that [the parents] *reasonably* should have known (since they lived there) the identity of the perpetrator." (*Id.* at p. 670.)

Although parents contend the juvenile court employed a res ipsa loquitur presumption to reach its finding here, we find no evidence of that in the record. In its lengthy ruling setting forth the basis for its ruling, the court made detailed findings regarding the credibility of the testifying witnesses and the substance of the evidence that supported the allegations of the petition. The only reference the court made *at all* to *E.H.*, *supra*, 108 Cal.App.4th 659, was the following comment: "And as I re-read, and I don't have the cite of the 'E.H.' case, again it was clear to me that this is one of very similar *factually*, in a lot of ways these are." (*Sic.*) (Italics added.)

In any event, parents have failed to demonstrate that any reliance by the juvenile court on *E.H.* was erroneous. The case, published in 2003, has been widely followed and parents cite no legal authority questioning its rationale. As the *E.H.* court explained, "where there is no identifiable perpetrator, only a cast of suspects, jurisdiction under [section 300(e)] is not automatically ruled out. A finding may be supported by *circumstantial evidence* as it is here. Otherwise, a family could stonewall the Department and its social workers concerning the origin of a child's injuries and escape a jurisdictional finding under [section 300(e)]." (*E.H., supra,* 108 Cal.App.4th at p. 670, italics added; see *K.F. v. Superior Court*, *supra*, 224 Cal.App.4th at pp. 1382–1383 [juvenile court could sustain § 300(e) allegation where the parents were primary caretakers, were new parents taking care of their first child, and only other caretakers were older and had raised children

7

apparently with no abuse allegations].)  Here, substantial evidence supported findings that Ezekiel's injuries were the result of abuse, he was never out of his parents' custody during the time his injuries occurred, and it was not possible that the injuries were caused by his two-year-old brother.  Based on the evidence before it, the juvenile court could reasonably conclude that Mother or Father caused Ezekiel's injuries, or, they reasonably should have known the other parent caused his injuries.[5]

Parents also argue the juvenile court's reliance on *E.H.* amounts to an application of the section 355.1 presumption to section 300(e).  In dependency cases, when child abuse is cited as the ground for jurisdiction under section 300, subdivisions (a), (b), or (d), the Legislature has authorized the juvenile court to rely on a presumption affecting the burden of production of evidence.  (§ 355.1, subds. (a) & (c).)  "Where the court finds, based upon competent professional evidence, that an injury, injuries, or detrimental condition sustained by a minor is of a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, . . . that finding shall be prima facie evidence that the minor is a person described by subdivision (a), (b), or (d) of Section 300."  (§ 355.1, subd. (a).)  Under section 355.1, the juvenile court must presume the child is subject to its jurisdiction unless the parent produces evidence " '*as to the actual cause of the injury*' " or detrimental condition.  (*In re D.P.* (2014) 225 Cal.App.4th 898, 903.)  If the parent introduces such evidence, the court

<hr />

[5] Parents cite *In re Roberto C.* (2012) 209 Cal.App.4th 1241, 1254–1256, but that case, decided by the same appellate court that decided *E.H.*, is distinguishable.  In *Roberto C.*, the juvenile court did not abuse its discretion in declining to assume the parents knew or should have known the child was injured or being severely abused when the child was happy and healthy at all times prior to his sudden collapse and hospitalization.  (*Roberto C.*, at pp. 1254–1256.)

must make its jurisdictional findings without regard to the presumption, and by weighing the evidence. (*Id*. at p. 904.) The statutory presumption does not, however, apply to section 300(e). (§ 355.1, subd. (a).) Parents contend the *E.H.* court's reliance on a res ipsa loquitur theory "is functionally equivalent to, if not broader than, the statutory presumption in section 355.1, subdivision (a)," and accordingly, the juvenile court erred in applying it to find Mother and Father knew or reasonably should have known Ezekiel was being abused to sustain the section 300(e) finding.

As parents acknowledge, however, res ipsa loquitur is a presumption affecting the burden of *producing evidence* that requires the trier of fact to assume the existence of the presumed fact unless the defendant introduces evidence to the contrary. (See Evid. Code, §§ 604, 646.) But here, the juvenile court did not rely on a presumption of negligence because the parents *did* introduce evidence to the contrary, including opinions from two medical experts—evidence that the juvenile court carefully discussed and expressly weighed on the record. We may not second-guess those determinations on appeal. (*E.H.*, *supra*, 108 Cal.App.4th at p. 669.)

Moreover, as the *E.H.* court explained, resort to the presumption found in section 355.1 is not required in a case involving a section 300(e) allegation. A finding under section 300(e) does not require knowledge of the actual identity of the abuser; rather, a juvenile court may exercise jurisdiction if the parents knew or reasonably should have known that their child was being abused. (*E.H., supra,* 108 Cal.App.4th at p. 670.) Here, as discussed above, there is no dispute that the juvenile court's finding was amply supported by the circumstantial evidence that Ezekiel, a five-week-old, nonmobile infant suffered serious physical abuse and that Mother and Father were the sole caretakers. Under the totality of the evidence, the juvenile court could

reasonably conclude that Mother and Father should have known Ezekiel was harmed by the other parent.

## III.

## DISPOSITION

The juvenile court's jurisdictional order is affirmed.

MARGULIES, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A162737
*In re D.G.*