Filed 9/21/23  In re Ka.C. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Ka.C. et al., Persons Coming Under the Juvenile Court Law. | B326943 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 22CCJP02479A-D |
| Plaintiff and Respondent, | |
| v. | |
| KARLA G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Lisa A. Brackelmanns, Juvenile Court Referee. Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

————————————

Appellant Karla G. (mother) is mother to minor children Ka.C. (born 2011), A.C. (born 2012), Ke.C. (born 2013) and J.C. (born 2017). The children's father (father) is not a party to this appeal.

Mother challenges the juvenile court's jurisdictional findings in support of the four Welfare and Institutions Code[1] section 300, subdivision (b) counts sustained against her. She further challenges the juvenile court's dispositional orders removing the children from her care. We affirm.

## BACKGROUND

The family was the subject of juvenile court proceedings that began in 2014 following an act of domestic violence perpetrated by father against mother. The juvenile court terminated jurisdiction in 2015, granting mother sole legal and physical custody of her children, Ka.C., A.C., and Ke.C., who are three of the four dependents in the current proceedings, as well as E.C., who is now an adult. Mother had completed parenting, domestic violence, and other counseling programs; father had not participated in any court-ordered programs. Mother and father had another child, J.C., in 2017.

The current proceedings began in April 2022. By this time, mother and father's relationship had ended, and mother was living with a new partner, Carlos A. An anonymous caller reported concerns about mother's mental health, her relationship with Carlos, and mother's willingness to care for her children. According to the caller, mother said she told her children she wanted to give them up, had called the Los Angeles County Department of Children and Family Services (Department), and

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

2

would not be picking the children up from school. The Department began an investigation. Mother confirmed many of the concerns that the caller reported, including that she was overwhelmed by her children and had attempted to overdose on prescription pills. Mother lamented her lack of control over her children and stated that her younger children looked to then 11-year-old Ka.C., rather than mother, as their parent. Mother had been prescribed a number of psychotropic medications starting in November 2021 to address mental health issues. According to her therapist, mother was awaiting admission to a comprehensive care program for adults with mental health issues. The therapist suspected mother was off her medications at the time of the referral. Mother later admitted she did not take her medications consistently.

In the course of the Department's investigation, mother twice tested positive for amphetamine and methamphetamine. Despite the positive tests, mother continuously denied being a current user of those drugs.

Following mother's second positive drug test, the Department obtained an order detaining the children. The children were placed with their adult sister, E.C. The day of their detention, mother was reported as threatening to commit suicide and behaving erratically. Later that evening, mother attempted to commit suicide by jumping off a balcony. Fortunately, she was not seriously injured.

The Department filed a petition in late June 2022, a few days after mother jumped off the balcony. The petition alleged mother had mental and emotional problems and was a current abuser of methamphetamine, amphetamine, marijuana, and prescription medication. Mother's condition and drug abuse, the

3

petition alleged, rendered her incapable of providing regular care of her minor children.

The day after the Department filed the petition, the juvenile court ordered the children removed and ordered the Department to provide mother with referrals for counseling and drug testing. The children remained placed with E.C.

In early August 2022, the juvenile court arraigned father, who had recently been released from prison (why he was there the record does not disclose) to a residential reentry program. A week later, the Department filed an amended petition adding that father had a history of substance abuse and criminal activities, mother and father engaged in domestic violence, and that mother and father failed to provide the children with the basic necessities of life.

A second amended petition thereafter added allegations that Carlos had been convicted of statutory rape, was a current abuser of methamphetamine, and mother endangered the children by allowing him to live in their home and have unlimited access to them.

The juvenile court sustained the second amended petition in part, including counts b-1 and b-3. In sustaining the b-1 count, the court found that mother's unresolved and "very serious mental health issues[] plac[ed] the children at risk." In sustaining count b-3, the court found that mother's mental health and substance abuse issues impaired her ability to provide the children with the basic necessities, and father had also failed to provide the children with the basic necessities, even when not incarcerated.

The juvenile court declared the children dependents of the court, noted that father had submitted to removal, and ordered the children suitably placed. The court ordered mother's

4

reunification case plan to include a full drug and alcohol program with after care, random and on-demand weekly drug testing, a 12-step program with court card and sponsor, a domestic violence group program for victims, individual counseling, and monitored visits in a neutral setting.

Mother timely appealed.

## DISCUSSION

The Department argues mother forfeited this appeal by failing to challenge the juvenile court's findings in support of count b-3.  We agree.

## 1.    Jurisdiction

A juvenile court has jurisdiction over a child under any of the circumstances described in section 300, subdivisions (a) through (j).  These include parents' physical abuse, neglect, or sexual abuse of their children, among others.  (*Ibid*.)

Jurisdiction under section 300 may be established based on the conduct of only one parent.  (*In re M.C.* (2023) 88 Cal.App.5th 137, 150-151.)  And, only one valid ground for jurisdiction is necessary to affirm a juvenile court's exercise of jurisdiction. (*In re D.P.* (2014) 225 Cal.App.4th 898, 902.)  Thus, to defeat juvenile court jurisdiction by appeal, an appellant must successfully challenge every jurisdictional count regardless of which parent's conduct supplied the basis for the count.

Here, mother failed in her opening brief to challenge the juvenile court's exercise of jurisdiction pursuant to count b-3, and she failed to challenge the allegations concerning father.  She offers two reasons for her failure to challenge count b-3.  She asserts that count b-3 only applied to father, and the findings against father "arguably" do not support jurisdiction.  Mother's failure to show error in the court's count b-3 findings forfeits her challenge to jurisdiction.

5

First, we disagree with mother that count b-3 applied only to father's conduct. The record is clear that the parties understood the allegations applied to both parents. Mother's counsel argued against the b-3 count before the juvenile court. The allegations supporting count b-3 expressly extend to mother's conduct. In relevant part, the petition states that "[o]n prior occasions, . . . mother . . . has failed to provide the children . . . the basic necessities of life including the necessities of food, shelter and sufficient clothing." Mother is correct that the allegations against father are more extensive, including that his failure to provide for the children and mother "endangers the children's physical and emotional health, safety and well being and places the children at risk of physical and emotional harm and damage." But it is implicit in the specific allegations against father that mother's deficiencies also endangered the children. If the children were safe and secure with mother, then neglect by father, who had long been absent from their lives, would not put them in danger.

Second, mother has forfeited her challenge to the count b-3 findings by failing to demonstrate error by the juvenile court in asserting dependency jurisdiction based on father's conduct. Asserting only that the findings against father "arguably" do not support jurisdiction is not a cognizable ground for reversal. The appellant must actually make the argument she perceives as possible in order for us to consider it. (*In re J.F.* (2019) 39 Cal.App.5th 70, 79-80 [points not supported by reasoned argument deemed waived].)

We decline mother's request that we consider her other challenges to the juvenile court's exercise of jurisdiction. The unchallenged findings against mother in count b-3 are sufficient

6

to support the juvenile court's dispositional orders, for the reasons set forth below.

## 2. Removal

The juvenile court's unchallenged findings with respect to count b-3 also support its removal orders.

Removal is appropriate where "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of [a] minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . ." (§ 361, subd. (c)(1).) Thus, there are two requirements for removal: a risk of harm to the child and the absence of alternatives short of removal to protect the child from harm.

"In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re D.B.* (2018) 26 Cal.App.5th 320, 332.) "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.V.* (2013) 217 Cal.App.4th 126, 135-136.)

We review a dispositional order removing a child from a parent for substantial evidence, " 'keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence.' " (*In re I.R.* (2021) 61 Cal.App.5th 510, 520.)

### a. Risk of harm

Mother argues if the jurisdictional findings are reversed, then there is no basis for the dispositional orders. However, as

7

set forth above, mother forfeited her challenge to jurisdiction under count b-3. Because her appeal of the removal order relies on defeating all grounds for exercising jurisdiction, the forfeit of her challenge of jurisdiction under count b-3 forfeits her challenge to the risk of harm underlying the removal order as well.

Even if mother had not forfeited it, substantial evidence supports the juvenile court's order removing the children from mother's care. Mother's stated lack of desire to parent her children and self-destructive stress responses combine to create an unsafe environment for her children, even if no child has yet been harmed. The children look to their 11-year-old sister, instead of mother, as a parent. Ka.C. confirmed mother left her alone and she had to look out for herself. A.C. said mother was not a mother and she did not support him. When overwhelmed by her children's behavior, mother told them she wanted to give them up to the Department. After she learned father was released from prison, she took methamphetamine. After she got in an argument with Carlos, she tried to swallow an entire bottle of pills. After her children were removed and placed with E.C., she threatened to commit suicide and tried to carry through with that threat by jumping off a balcony.

Though "speculative" harm cannot support removal (*In re David M.* (2005) 134 Cal.App.4th 822, 830), the juvenile court need not await actual harm to order removal (see *In re T.V.*, *supra*, 217 Cal.App.4th at pp. 135-136). It is not speculative to recognize the risk posed by leaving four children aged five to 11 with a mother who is admittedly overwhelmed by her children and whose unresolved mental health condition causes her to respond to stress by taking actions capable of incapacitating her and traumatizing her children.

### b.     Reasonable means to prevent removal

Mother argues that a family maintenance safety plan would have been a reasonable means of protecting the children short of removing them.  In support of this argument, mother claims her reunification plan requires her "to participate in services—individual therapy and substance abuse treatment—she has already undertaken" and that the children could be protected in her care "given her progress so far."

However, mother refers to no evidence of that progress.  Nowhere in her opening brief does mother show she has become consistent in taking her medications or otherwise progressed in resolving the mental health issues that brought her family to the Department's attention.  At best, mother asserts she "continues to be treated by a psychiatrist and managers her mental health with medication; she continues with psychotherapy; she is being treated for using controlled substances, and her urinalyses are negative for such substances."  We are not persuaded the juvenile court erred by finding family maintenance was not a reasonable alternative to removal.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.


GRIMES, J.


WE CONCUR:


STRATTON, P. J.                    WILEY, J.


9