CHAVEZ, J.,
Dissenting. — I dissent.
The majority frames the issue on appeal as a challenge to the limits of parental use of corporal punishment rather than whether or not substantial evidence supports the juvenile court’s jurisdictional finding.[1] The majority further concludes the juvenile court’s ruling “relied on its categorical view that ‘hitting children with shoes’ is ‘physical abuse’ and ‘not a proper form of discipline.’ ” (Maj. opn., ante, at p. 637.) It is my assessment that there was sufficient substantial evidence before the court below to support the finding of jurisdiction and rather than improperly relying on “its categorical view” the juvenile court instead merely made an observation concerning the evidence upon which it relied in reaching its conclusion.
*644 I also dissent from the majority view that in order to align dependency law with criminal law there should be a further requirement that dependency courts, when determining whether corporal punishment of a child creates even a risk of serious harm, must consider a three-part evaluation of the action taken.
BACKGROUND
The initial referral to the Los Angeles County Department of Children and Family Services (Department) was “that the mother is heard yelling and screaming profanities at the children followed by a sound that resembles hitting.” In addition, the older child (D.M., bom 2007) was heard pleading with Jessica G. (mother) to stop beating him. During its investigation the Department initially heard from mother that “she does not hit her children to the point that they plead to stop,” that she “has never hurt them or left marks on them,” and only threatened to spank the children with her sandal. Later mother admitted to hitting the children with both her hand and her sandals, for which she expressed remorse.
In an August 2014 interview with the Department social worker, D.M. stated “My mom hits us sometimes with the sandal and with her hands on our butts. It doesn’t hurt too much. When she hits me I get scared of my mom. I can’t remember when was the last time she hit me.” The same day the younger child (J.M., born 2010) told the social worker “Yes, my mom hits me with a sandal and with her hand. She hits [D.M.] most. She yells at me and I cry.” Guillermo (father) told the same social worker that mother “used to hit the kids in Mexico with her sandals” though not to the point where he became “concerned.”
The Department sought jurisdiction based on mother striking J.M. and allegations of domestic violence between Guillermo and mother. The petition alleged that the child and his sibling, D.M., were at risk of suffering serious physical harm by their mother. At the jurisdiction hearing, after the attorney for the minor children asked that the petition be amended to reflect mother’s “inappropriate physical discipline” based on statements from mother that she hit her children with a shoe, the juvenile court sustained the allegation as it was originally pled. The court noted that “[Hjitting children with shoes is not a proper form of discipline, and it’s physical abuse.” The court further observed that mother had done so on “repeat occasions.”
DISCUSSION
I. Mootness
In In re C.C. (2009) 172 Cal.App.4th 1481 [92 Cal.Rptr.3d 168] (C.C.), the juvenile court terminated its jurisdiction over a 12-year-old child following its *645 denial of visitation and conjoint counseling between the mother and minor, and issued a family law “exit order” determining custody and visitation. Under these circumstances, Division Seven of our court observed that dismissal of an appeal for mootness should not be automatic, but based on a case-by-case determination. The court then assessed the mother’s contention that the finding of detriment upon which the challenged order (denying visitation) was based created the possibility of prejudice in subsequent family law proceedings. The court concluded that though the mother’s concern was highly speculative, based on all of the circumstances in that complex case, and “in an abundance of caution . . . because dismissal of the appeal operates as an affirmance of the underlying judgment or order [citations]” (id. at p. 1489), it would consider the merits of the mother’s appeal.
C.C. was cited, without discussion or analysis by In re D.C. (2011) 195 Cal.App.4th 1010, 1015 [124 Cal.Rptr.3d 795], which was then cited without discussion or analysis by In re D.P. (2014) 225 Cal.App.4th 898, 902 [170 Cal.Rptr.3d 656], as support for the categorical conclusion that an appellate court has discretion to reach the merits of a jurisdictional finding when there is only the most speculative threat of prejudice to the parent whenever there is a finding that the parent intentionally injured a child. Indeed the majority opinion, citing In re D.P, chooses to exercise that discretion, also without the careful case-by-case determination envisioned by the C.C. court.
“[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent. [Citations.]” (In re Alysha S. (1996) 51 Cal.App.4th 393, 397 [58 Cal.Rptr.2d 494].) “For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings . . . .” (In re LA. (2011) 201 Cal.App.4th 1484, 1492 [134 Cal.Rptr.3d 441] (I.A.).)
A similar situation occurred in the matter of I.A. There, the father asked the court to review the evidentiary support only for the juvenile court’s jurisdictional findings against him. The I.A. court explained:
“Because he does not challenge the jurisdictional findings involving Mother’s drug abuse, however, any decision we might render on the allegations involving Father will not result in a reversal of the court’s order asserting jurisdiction. The juvenile court will still be entitled to assert jurisdiction over the minor on the basis of the unchallenged allegations. Further, the court will still be permitted to exercise personal jurisdiction over Father and adjudicate his parental rights, if any, since that jurisdiction is derivative of the court’s jurisdiction over the minor and is unrelated to Father’s role in creating the conditions justifying the court’s assertion of dependency jurisdiction.
*646 “Under these circumstances, the issues Father’s appeal raises are ‘ “abstract or academic questions of law” ’ [citation], since we cannot render any relief to Father that would have a practical, tangible impact on his position in the dependency proceeding. Even if we found no adequate evidentiary support for the juvenile court’s findings with respect to his conduct, we would not reverse the court’s jurisdictional and dispositional orders nor vacate the court’s assertion of personal jurisdiction over his parental rights.” (I.A., supra, 201 Cal.App.4th at p. 1492.)
While the father contended that the finding of jurisdiction could have other consequences for him beyond jurisdiction, the I.A. court noted “Father has not suggested a single specific legal or practical consequence from this finding, either within or outside the dependency proceedings.” (I.A., supra, 201 Cal.App.4th at p. 1493.)
However, an appellate court may address the merits of the jurisdictional findings against one parent where “the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) ‘could have other consequences for [the appellant], beyond jurisdiction’ [citation].” (In re Drake M. (2012) 211 Cal.App.4th 754, 762-763 [149 Cal.Rptr.3d 875] (Drake M.).) In contrast to I.A., the Drake M. court decided to consider the merits of the father’s appeal, stating: “Here, the outcome of this appeal is the difference between father’s being an ‘offending’ parent versus a ‘non-offending’ parent. Such a distinction may have far-reaching implications with respect to future dependency proceedings in this case and father’s parental rights. Thus, although dependency jurisdiction over Drake will remain in place because the findings based on mother’s conduct are unchallenged, we will review father’s appeal on the merits.” (Drake M., supra, 211 Cal.App.4th at p. 763.)
In Drake M., the father challenged a single jurisdictional finding against him involving his use of medical marijuana. Because this single jurisdictional finding was the difference between the father being an offending parent versus a non-offending parent, the appellate court addressed the merits of his appeal. The Drake M. court noted that the Department had failed to show that the father was unable to care for his child due to substance abuse. Without more, mere usage of drugs by a parent is not a sufficient basis on which dependency jurisdiction can be found. (Drake M., supra, 211 Cal.App.4th at p. 764.) There was no evidence that the father had a substance abuse problem or that the father was unable to supervise or protect his child. (Id. at pp. 767-769.) The jurisdictional finding involving the father was therefore reversed. (Id. at p. 771.)
*647 Mother, who has been awarded full custody of both minors, argues that this court should address her challenges to the jurisdictional findings involving her. However, there are significant differences between the present matter and the situation in Drake M. First, in Drake M., there was a jurisdictional finding against the father involving his occasional use of medical marijuana. In this case the jurisdictional findings involve mother’s physical discipline of her child(ren) with a shoe, which the juvenile court found to be unreasonable and age inappropriate. There were also allegations of domestic violence between the parents which were sustained against the father.
Mother argues that we should address the merits of her claim because “the finding . . . serves as the basis for dispositional orders that are also challenged on appeal.” (Drake M., supra, 211 Cal.App.4th at p. 762.) Here, mother challenges the order requiring her to participate in family maintenance services including parent education, domestic violence counseling for victims, and individual counseling to address case issues.
At disposition the juvenile court has broad discretion to make “all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child.” (Welf. & Inst. Code, § 362, subd. (a); In re Jasmin C. (2003) 106 Cal.App.4th 177, 180 [130 Cal.Rptr.2d 558].) The problem that the juvenile court seeks to address need not be described in the sustained Welfare and Institutions Code section 300 petition. (See In re Christopher H. (1996) 50 Cal.App.4th 1001, 1006-1008 [57 Cal.Rptr.2d 861].) In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order. (See I.A., supra, 201 Cal.App.4th at p. 1492 [“A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established.”].)
At disposition, the juvenile court is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interests of the children. (In re Rodger H. (1991) 228 Cal.App.3d 1174, 1183 [279 Cal.Rptr. 406]; In re Christopher H., supra, 50 Cal.App.4th at pp. 1006-1008.) Instead, the court may consider the evidence as a whole. Here, the evidence showed that mother struck her children with a shoe on more than a few occasions while “yelling and screaming” at them. The evidence also established that mother was a victim of domestic violence. The services ordered were presumably for the benefit of both the children and mother and were made within the authority of the juvenile court.
As for the finding that there was at least a substantial risk that the minors would suffer serious, nonaccidental physical harm at the hand of their mother, there has been no showing of how that finding would prejudice mother in the *648 future. At most there is speculation that she might be prejudiced in some fashion. In sum, under the circumstances of this case, mother has failed to show that this case fits into the narrow exception created by Drake M. For this reason, I would decline to address the evidentiary support for the challenged jurisdictional findings. (I.A., supra, 201 Cal.App.4th at p. 1492.)
II. Substantial evidence of jurisdiction
The majority finds a lack of substantial evidence to support a finding that there is a substantial risk of “serious physical harm” on these facts and then engages in a discussion of parental rights to physically discipline his or her child after asserting that the juvenile court applied an incorrect legal standard. I view the issue differently.
Under the substantial evidence standard of review we review the entire record, drawing all reasonable inferences in favor of the trial court ruling. Where a factual finding is not explicit, we must infer that the trial court made every factual finding necessary to support its decision. (Fladeboe v. American Isuzu Motors Inc. (2007) 150 Cal.App.4th 42, 48 [58 Cal.Rptr.3d 225].) We make no credibility decision nor do we weigh the evidence. (Carson v. Facilities Development Co. (1984) 36 Cal.3d 830, 838 [206 Cal.Rptr. 136, 686 P.2d 656].)
Jurisdiction is appropriate under Welfare and Institutions Code section 300, subdivision (a) when “there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child’s siblings, or a combination of these and other actions by the parent . . . which indicate the child is at risk of serious physical harm . . . [, which] does not include reasonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury.”
Jurisdiction is also authorized under Welfare and Institutions Code section 300, subdivision (j) if “[the] child’s sibling has been abused or neglected, as defined in subdivision (a) . . . and there is a substantial risk that the child will be abused or neglected, as defined in [that] subdivision[].”
When viewed in the light most favorable to the court’s jurisdictional finding, drawing every reasonable inference and resolving all conflicts in favor of the order, does the evidence support the conclusion that repeated striking of a child three years old and younger, with a shoe, while screaming and yelling at the child, is not reasonable or age-appropriate? I conclude it does.
The evidence before the juvenile court from Guillermo, D.M., J.M. and mother herself, was that mother, on repeated occasions over a period of years, *649 used a shoe to strike her young children as a form of discipline. It is axiomatic that small children should not be hit with hard objects, especially to the point of bruising. (See In re A.E. (2008) 168 Cal.App.4th 1 [85 Cal.Rptr.3d 189].) While there was no evidence of bruising or other physical injury, D.M. did express fear of mother when she hit him. It is also clear that “[t]he court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child.” (In re N.M. (2011) 197 Cal.App.4th 159, 165 [127 Cal.Rptr.3d 424].)
I further dissent from the majority’s effort to create a new standard for asserting jurisdiction (Welf. & Inst. Code, § 300) over a child in the juvenile court by grafting onto dependency proceedings considerations applicable elsewhere in the law. “The goal of dependency proceedings, both trial and appellate, is to safeguard the welfare of California’s children. ‘The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time.’ (In re Marilyn H. (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826].) These proceedings are ‘ “designed not to prosecute a parent, but to protect the child.” ’ [Citation.] The best interests of the child are paramount. [Citations.]” (In re Josiah Z. (2005) 36 Cal.4th 664, 673 [31 Cal.Rptr.3d 472, 115 P.3d 1133].)
The cases relied on by the majority are distinguishable in that they involve not issues of dependency, but the proper recordation of information in the state’s Child Abuse Central Index (Gonzalez v. Santa Clara County Dept.of Social Services (2014) 223 Cal.App.4th 72 [167 Cal.Rptr.3d 148]) or the duty to instruct a jury of the standard of justifiable force as a defense to a criminal defendant-parent claiming the right to physically punish a child (People v. Whitehurst (1992) 9 Cal.App.4th 1045 [12 Cal.Rptr.2d 33]; People v. Clark (2011) 201 Cal.App.4th 235 [136 Cal.Rptr.3d 10]). It is my position that the focus of these cases is far removed from the concerns of safeguarding a child at risk of potential harm, and should not be used as a means of adding another evaluation to the many tasks required of the dependency courts.
The juvenile court was in the best position to evaluate the parties who were present in court with their counsel and to make findings of fact based on that assessment. The weight that the juvenile court gave to Guillermo’s statement and to the statements of all the others is entitled to deference and respect. The juvenile court, in what can fairly be described as a close case, reached the conclusion that these young children were at risk of serious physical harm at the hands of their overworked, single mother who had demonstrated a lengthy *650 pattern of inappropriate discipline of them. Substantial evidence supports that conclusion whether or not it is one that we might have reached if we were deciding the case at the trial court level.
I would affirm the juvenile court jurisdictional order.

 Both the majority and this dissent address only the issue of jurisdiction based on mother’s striking the child(ren) as it relates to Welfare and Institutions Code section 300, subdivisions (a), (b) and (j).