Filed 1/21/26  P. v. Ayala CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D084713 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE418567) |
| JOYCE ADELI AYALA, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed in part, reversed in part and remanded with directions.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Anastasia Sagorsky, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Joyce Adeli Ayala of one count of inflicting corporal injury on a child (Pen. Code, § 273d, subd. (a)).[1] The trial court sentenced Ayala to 365 days in jail, but stayed the term pending successful completion of four years of formal probation. On appeal from the judgment, Ayala asserts the trial court erred by (1) failing to instruct the jury on her right to reasonable parental discipline and modifying the self-defense pattern instruction, (2) failing to instruct on lesser included offenses, and (3) failing to instruct on unanimity. In addition, Ayala asserts the probationary term imposed by the court that authorizes the search of her electronic devices is unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and unconstitutionally overbroad.

As we explain, we reject Ayala's first three appellate contentions but agree that the electronic search condition is unreasonably broad under *Lent*. Accordingly, we reverse the judgment of conviction in part and remand with instructions to strike the electronic search condition and consider whether a more narrowly tailored or alternative condition would be reasonable. The judgment is otherwise affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Prosecution Case*

On June 28, 2023, 15-year-old J.I. and his younger sister were at home with their mother, Ayala, when J.I. heard Ayala arguing on the telephone with their father, L.I. At the time, Ayala and L.I. were separated and in the process of divorcing. When the call ended, Ayala stormed into J.I.'s bedroom and asked him to help her with the laundry. J.I. testified that he "wasn't feeling the best" that day, and had been dealing with headaches and congestion all week. J.I. responded to Ayala's request with a "little attitude"

---

[1] Subsequent undesignated statutory references are to the Penal Code.

2

and she walked out of his room.  J.I. said his mother thought she heard him call her a "fucking retard," which caused her to storm back into his room and hit him.  J.I. testified that he did not say those words, but did mutter under his breath that he did not want to help.

J.I. testified that he could not remember if Ayala hit or slapped him, but knew she tried to grab his cell phone from his hand.  J.I. said he was lying on his bed and Ayala climbed on top of him, straddling J.I. between her legs.  Ayala continued to hit J.I. as she demanded that he give her his phone. J.I. testified that Ayala also bit his arm hard.  J.I. stated that as he tried to get out from under Ayala by sliding down off his bed, she choked him with her legs around his neck.  J.I. stated he could not breathe and thought he was going to pass out.  His vision became blurry and started to dim, but he was able to use his hand to slide out onto the floor.

Once free, J.I. ran into the hallway.  J.I. and Ayala then ended up on the floor, but J.I. could not remember how they got there.  He testified that Ayala again bit him hard, this time on the leg.  J.I. did not remember exactly how the altercation, which was a year before trial, ended.  He did remember that Ayala eventually went outside to load the laundry into her car and she "threw an apple sauce at" him before leaving.  J.I. testified that he never hit his mother or tried to fight back, and he did not pull her to the ground in the hallway.  He said he repeatedly asked her to stop her attack and let him call his father.  J.I. also testified that Ayala hit him both with a closed fist and slapped him with an open hand.

During the altercation, Ayala's downstairs neighbor heard loud banging and thought furniture was being thrown above.  The commotion caused a light fixture to fly off her wall onto the floor.  The neighbor also heard J.I. begging his mother to stop and leave him alone.  The neighbor then

3

witnessed Ayala and her daughter leave the apartment and get into her car. She heard Ayala screaming back to J.I. that he was "a narcissist" and "[w]hy were you raised like a narcissist?" She then saw J.I. sitting on the stairwell near her front door crying, and she called the police. The neighbor testified Ayala was irate and did not appear injured or afraid. The neighbor also testified that she had heard Ayala curse and yell at her children frequently in the past.

Another neighbor, who lived below Ayala and one apartment to the side, also heard the altercation. As she was vacuuming, she heard banging. She turned off her vacuum and went outside to see what was going on. The neighbor then heard J.I. screaming for help. Moments later, the neighbor saw Ayala run down the stairs to her car, where her daughter was, and heard Ayala scream at the top of her lungs, "this is what happens when you have sex with a narcissist, you have a narcissist for the child." The neighbor testified that Ayala was walking normally and did not appear injured. This neighbor also heard Ayala banging on her own apartment door and yelling, "let me in."

Shortly after Ayala left, Sheriff's Deputy Christina Rodriguez arrived at the apartment in response to the neighbor's report. Rodriguez spoke with J.I. and the neighbors. She noticed J.I. had redness on his neck and arms, and bruising on his face. J.I. was visibly upset and told Rodriguez what happened. Rodriguez also saw that J.I. had bite marks on his left wrist and one of his legs, and scratch marks on his neck. At some point later, Rodriguez met with Ayala. At that time, Ayala had an injury to her leg, which was wrapped, and she was using crutches.

J.I.'s younger sister, who was ten years old at the time of trial, testified that she saw her mother on top of J.I. and did not see her brother hit her

4

mother or put her in a headlock. L.I. testified that at the time of the incident he and Ayala were in the midst of divorcing, and that J.I. had been having some behavioral issues, but the issues were minor, "typical teenage stuff," like "mouthing off back."

B. *Defense Case*

Ayala testified in her own defense. She told the jury that she and J.I.'s father were divorcing at the time of the altercation with J.I. Around the same time, J.I. had started to become more volatile and disrespectful, which Ayala attributed to him being a teenager. She explained that on the day of the fight, she and her daughter were gathering clothes to put into the car to take to the laundromat, while J.I. played video games in his room. When she asked J.I. to help, he refused and made disrespectful comments into his gaming headset to his friends about Ayala.

Ayala heard the comments and responded by trying to take J.I.'s phone away from him. She denied hitting or slapping J.I., but explained that the interaction became physical because he was resisting her from taking the phone. Ayala testified that she and J.I. began "wrestling and fighting" over the phone. She said any injury J.I. sustained was from Ayala defending herself. She also stated that J.I. choked her by putting his arm on her neck, and that she bit his arm instinctively to force him to release her. Ayala testified that if she bit J.I.'s leg it was also in self-defense, and that if she climbed on top of him it was "to stop [him from] putting hands on his mother."

Ayala testified that after the fight ended, she had bruises all over her body, and that during the wrestling, J.I. flipped her over and her foot hit a door. When the fight ended, Ayala left to go to the laundromat. When she

5

arrived, Ayala realized her foot injury was severe, so she drove herself to the hospital.

On cross-examination, Ayala accused J.I. of lying on the witness stand and said that it was J.I.'s fault that he and his sister were no longer in Ayala's custody. She testified that J.I. had "narcissistic tendencies" and told the jury that the prosecution was using "narcissistic tactics" against her.

C. *Verdict and Sentencing*

At the conclusion of trial, the jury found Ayala guilty of the single charge she faced, inflicting corporal injury upon a child in violation of section 273d, subdivision (a). The following month, the court sentenced Ayala to 365 days in county jail, but stayed the term pending Ayala's successful completion of four years of formal probation.

Ayala timely appealed.

## DISCUSSION

### I

*The Trial Court Properly Rejected a Jury Instruction on Reasonable Parental Discipline and Modified the Self-Defense Instruction*

### A

*Additional Background*

During the discussion of jury instructions between the trial court and the parties, Ayala's counsel brought up CALCRIM No. 3405, which defines

6

the parental right to reasonably discipline a child.[2] After reviewing the instruction, the court stated, "I'm not so sure the facts suggest that physical force was used for purposes of discipline." Defense counsel replied, "And I don't necessarily disagree with that, Your Honor; however, I think the fact that discipline was mentioned during the testimony, I think that it should be given just in an abundance of caution. The … punishment was essentially the taking away of the phone, and so the force used to take the phone. I think that the … bite allegation is something separate."

The court and the parties then discussed how to properly word the instruction. The court stated, "If I start it by saying, 'A parent is not guilty of the crime charged if she used justifiable physical force in the taking of the phone,' that's an incorrect statement of the law." The court continued, "Then what happens after the—if there was a confrontation, where she initiates the physical activity, then she could be guilty of the crime, and she's not absolved of guilt merely by the fact that she did not use excessive force in taking the phone. You see what I'm saying? I don't know how to … address it. Because this isn't … the gravamen of this case is not a suggestion that some method of discipline was inappropriately applied." The court then asked Ayala's counsel how to word the instruction without misstating the law, and she responded that she was struggling to find appropriate wording.

---

2      The instruction states: "A [parent] is not guilty of <insert crime> if (he/she) used (justifiable physical force/ [(a/or) another] justifiable method) to discipline a child. (Physical force/ [or] <insert other method of punishment>) is justifiable if a reasonable person would find that punishment was necessary under the circumstances and that the (physical force/ [or] method) used was reasonable. [¶] The People must prove beyond a reasonable doubt that the (force/ [or] method of punishment) used was not justifiable. If the People have not met this burden, you must find the defendant not guilty of <insert crime>." (CALCRIM No. 3405.)

7

The court posited that the defense was entirely self-defense: Ayala did not deny physical contact with J.I., but testified that any contact was only to defend herself. Ayala's counsel agreed, stating, "it's a self-defense case and that is the crux of the argument." The court and counsel then discussed CALCRIM No. 822, which defines the elements of inflicting corporal injury on a child, and states as its third element: "When the defendant acted, she was not reasonably disciplining a child." (CALCRIM No. 822.)

The court stated, "I really don't see how I can … word 3405. It's not the … law given the facts of this case or the charge that Ms. Ayala is facing. It clearly isn't … You can't … submit something to [the jury] to say [Ayala] is not guilty of Count 1 if she used reasonable force or a reasonable method to discipline the child, because the method—the discipline of the child was the taking of the phone. She didn't throw him in a corner or put him in a bin or anything of that nature. There was no … suggestion that he was being struck because of … 'I was mad at him so I was spanking him.' She didn't testify to that." Ayala's counsel then reiterated that she was struggling with how to correctly word the instruction and suggested "leav[ing] it as general as possible." The court responded "the general instruction as to the facts of our case is embodied in Element 3 of 822" and defense counsel submitted on the issue. The court concluded it was rejecting the parental discipline instruction, over defense counsel's objection, because it was "not intended for the facts of our particular case."

With respect to self-defense, the court stated, "[CALCRIM No.] 3470 is the right to self-defense and that now has to be given based upon Ms. Ayala's testimony. I modified it … only in the sense that … it's not defense of another, it's not immediate danger of being touched unlawfully. This was immediate danger of suffering … bodily injury." The pattern instruction

8

reads, in part, "1. The defendant reasonably believed that she was in imminent danger of suffering bodily injury [or was in imminent danger of being touched unlawfully]." Ayala's counsel offered no comment on the court deleting the bracketed portion of the instruction.

The court instructed the jury as to Count 1 that the People had to prove: "1. The Defendant willfully inflicted cruel or inhumane physical punishment or an injury on a child. [¶] 2. The punishment or injury inflicted by the defendant caused a traumatic physical condition to the child. [¶] 3. When the defendant acted, she was not reasonably disciplining a child." The court also provided CALCRIM No. 3470, on self-defense, which instructed the jury, "The defendant is not guilty of the crime if she used force against another person in lawful self-defense. The defendant acted in lawful self-defense if [¶] 1. The defendant reasonably believed that she was in imminent danger of suffering bodily injury; [¶] 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; [¶] and [¶] 3. The defendant used no more force than was reasonably necessary to defend against that danger."

## B

### *Legal Standards*

A court may only instruct the jury as to correct statements of the law. (*People v. Edwards* (1991) 54 Cal.3d 787, 835.) Argumentative or confusing instructions must not be given. (*People v. Benson* (1990) 52 Cal.3d 754, 805.) In determining the adequacy of jury instructions, a reviewing court evaluates "the entire charge of the court and assume[s] jurors are intelligent people

9

capable of understanding and correlating all the instructions given." (*People v. King* (2010) 183 Cal.App.4th 1281, 1316.)

This court reviews claims of instructional error de novo. *(People v. Posey* (2004) 32 Cal.4th 193, 218.) Further, "[w]e look to the instructions as a whole and the entire record of trial, including arguments of counsel. [Citation.] Where reasonably possible, we interpret the instructions ' "to support the judgment rather than to defeat it." ' " (*People v. Mason* (2013) 218 Cal.App.4th 818, 825.)

C

*Analysis*

Ayala argues that the trial court erred by not providing CALCRIM No. 3405 because there was substantial evidence that she used reasonable discipline at the beginning of the altercation. Specifically, she asserts the instruction was required because the law allowed her to use reasonable force to take J.I.'s cell phone from him. Ayala also contends the court erred by not providing the instruction because it was not, as the court stated, inconsistent with her theory of self-defense. Finally, she argues the error was "compounded" by the trial court's modification of the self-defense instruction to remove a portion concerning a defendant's right to defend against simple battery.

The Attorney General responds that the court's decision not to give CALCRIM No. 3405 was appropriate because there was no evidence that Ayala was attempting to use reasonable force to discipline J.I. at the start of the altercation. Further, he asserts that the trial court correctly concluded that the instruction was incompatible with the defense's theory that Ayala was not guilty because she acted only in self-defense. Finally, the Attorney General asserts that Ayala's argument concerning the court's removal of the

10

portion of the self-defense instruction concerning simple battery was forfeited and, in any event, any error on this point was harmless.

As an initial matter, we agree with the Attorney General that Ayala's failure to object to the trial court's modification of the self-defense instruction forfeited the claim of error on appeal. (See *People v. Mora and Rangel* (2018) 5 Cal.5th 442, 471 ["failure to object to wording of jury instruction forfeits appellate claim of error"].) Even if the issue had not been forfeited, however, we hold the trial court did not err by excluding the bracketed portion of the pattern instruction pertaining to unlawful touching. "[T]he trial court must instruct on the general principles of law relevant to the issues raised by the evidence." (*People v. Smith* (2013) 57 Cal.4th 232, 239.) The court's omission of this portion was appropriate because there was no evidence showing Ayala reasonably believed she was in imminent danger of simple battery by J.I. Rather, her testimony was that J.I. was "wrestling and fighting" with her, he "chok[ed]" her to the point that she thought she would faint, and she had bruises over her entire body and injury to her foot due to J.I. "flipping" her. This conduct was beyond the realm of simple battery. Accordingly, the trial court appropriately chose to exclude that portion of the instruction.

Likewise, the trial court appropriately concluded there was no evidence to support Ayala's assertion that CALCRIM No. 3405 was required. Further, any error was harmless because the instruction for the crime of which Ayala was convicted, CALCRIM No. 822, required the jury to find beyond a reasonable doubt that "[w]hen the defendant acted, she was not reasonably disciplining a child." As the trial court noted during the discussion about the instruction, the only evidence presented concerning discipline was Ayala's statement that she intended to take J.I.'s phone away from him for refusing to help with the laundry and using disrespectful language. There was no

11

evidence that Ayala used any "physical force" or "method of punishment" to take away J.I.'s phone. Further, Ayala's act of taking the phone away from J.I. did not form the basis for the charge against her. Rather, Ayala was accused of physically attacking J.I.—specifically, repeatedly punching and hitting him, strangling him between her legs, and biting him twice. This evidence did not support an instruction on reasonable parental discipline.

In addition, Ayala did not assert that her physical assault on J.I. was a form of discipline. Rather, her sole defense was that J.I. was attacking her for taking his phone and that any injury he sustained was a result of Ayala trying to defend herself. This self-defense theory, as the trial court found, was incompatible with Ayala's defense of reasonable parental discipline.[3] (See *People v. Checketts* (1999) 71 Cal.App.4th 1190, 1197 ["It is well settled that the trial court has a sua sponte duty to instruct on a particular defense ' "only if it appears that the defendant is relying on such a defense, or if there

---

[3] Ayala cites *People v. Whitehurst* (1992) 9 Cal.App.4th 1045 to support her argument that there was sufficient evidence for the instruction on reasonable parental discipline. In *Whitehurst*, the defendant slapped his stepdaughter after she repeatedly interrupted his conversation with her mother and was later convicted of inflicting corporal injury on a child resulting in a traumatic condition. (*Id*. at pp. 1047–1048.) In reversing the judgment based on the trial court's failure to instruct the jury on reasonable parental discipline, the Court of Appeal explained, "Defendant's theory of the case as presented from not only his testimony but that of his wife and his stepdaughter as well was that he simply was disciplining [his stepdaughter] for continuing to interrupt and that he did not hit her very hard." (*Id*. at pp. 1049–1050.) Indeed, defendant's only theory was that he was reasonably disciplining his stepdaughter. (*Ibid*.) In contrast, Ayala's only defense was that J.I. attacked her when she tried to take his phone and that any injury he sustained was the result of self-defense. As Ayala's attorney acknowledged in the discussion of CALCRIM No. 3405, she did not assert that J.I.'s injuries were sustained as a result of reasonable parental discipline.

is substantial evidence supportive of such defense and the defense is not inconsistent with the defendant's theory of the case." ' "].)

II

*The Trial Court Did Not Err by Failing to Instruct*
*the Jury on Lesser Included Offenses*

Ayala next contends the trial court erred by failing to instruct the jury on the lesser included offenses of simple assault and simply battery. The Attorney General responds that the error was invited by Ayala's counsel and thus waived for purposes of appeal and, even if not waived, any error was harmless.

During discussion of the jury instructions, defense counsel stated, "With regard to lessers, I do think that simple assault and simple battery are lessers. However, I just wanted to make a record that I am not requesting those because I think it's either self-defense or it's not, and so I don't necessarily know that we need those at this time." The court replied that the record would so reflect, and did not instruct on either lesser included offense.

As a general rule, courts must instruct on lesser included offenses that are supported by the evidence, even over a defendant's objection. " ' " ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] ..." [Citation.] That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.] The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being

13

given.' " ' " (*People v. Medellin* (2020) 45 Cal.App.5th 519, 525 (*Medellin*), citing *People v. Souza* (2012) 54 Cal.4th 90, 114.)

Despite this policy, " 'the claim may be waived under the doctrine of invited error if trial counsel both ' "intentionally caused the trial court to err" ' and clearly did so for tactical reasons. [Citation.] Invited error will be found, however, only if counsel expresses a deliberate tactical purpose in resisting or acceding to the complained-of instruction.' " (*Medellin, supra*, 45 Cal.App.5th at p. 525.) The invited error doctrine applies here.

In *Medellin*, the court applied the doctrine where the defense attorney told the court the defense was not asking for lesser included offenses and responded, "Yes, your honor" to the trial court's question as to whether there were legitimate strategic purposes for making the request. (*Medellin, supra*, 45 Cal.App.5th at p. 524.) Here, Ayala's counsel did not have to be asked. Rather, she volunteered for the "record" that she was "not requesting those because I think it's either self-defense or it's not," expressing a clear tactical purpose for refusing the instructions. Ayala's reasons were logical in light of her reliance on the defense that she injured J.I. only in self-defense, and that she did not intentionally assault him. Given the weight she placed on her defense, Ayala apparently decided the evidence was strong enough to create reasonable doubt and the possibility of a complete acquittal.

"Allowing the defense to cause the error, lose at trial, and automatically obtain a reversal on appeal would reward the defense's failed gambit and eliminate the [invited error] rule's purpose." (*Medellin, supra*, 45 Cal.App.5th at p. 526.) This case presents a textbook example of invited error in the context of lesser included offense instructions. Accordingly, we hold the trial court's failure to give the instructions here does not require reversal.

14

*The Trial Court Did Not Err by Failing to Provide a Unanimity Instruction*

Ayala next asserts the court erred by not instructing the jury on unanimity.  Specifically, she contends that because the evidence indicated she inflicted several injuries on J.I., slapping, punching and biting him, the jury was required to agree on one specific act to convict her of inflicting corporal injury on a child.  The Attorney General responds that because Ayala was charged with, and the evidence showed, one continuous assault on J.I., the jury did not need to agree on a single underlying assaultive act.  The Attorney General also argues that any error was harmless beyond a reasonable doubt.

As discussed, " '[a]ssertions of instructional error are reviewed de novo.' [Citation.]  Whether or not the trial court should have given a 'particular instruction in any particular case entails the resolution of a mixed question of law and fact,' which is 'predominantly legal.' [Citation.]  As such, it should be examined without deference."  (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568 (*Hernandez*).)

The requirement that the jury be instructed on unanimity in certain cases is based on the foundational principle that "[i]n a criminal case, a jury verdict must be unanimous."  (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).)  "[C]ases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act.  [Citations.] [¶]  This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there

is no single offense which all the jurors agree the defendant committed.' " (*Ibid.*)

"A unanimity instruction is required only if the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged." (*People v. Maury* (2003) 30 Cal.4th 342, 423.)  "[T]he unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.' [Citation.]  In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime.  In the first situation, but not the second, it should give the unanimity instruction." (*Russo, supra*, 25 Cal.4th at p. 1135.)  "A requirement of jury unanimity typically applies to acts that could have been charged as separate offenses." (*Maury*, at p. 422.)

California case law has developed an exception for cases involving a "continuous course of conduct." (*People v. Lueth* (2012) 206 Cal.App.4th 189, 196 (*Lueth*).)  The " 'continuous-course-of-conduct exception' to the requirement of a unanimity instruction," however, is really "a catch-all term, which, somewhat confusingly, embraces two wholly distinct principles.  [¶] First, the continuous-course-of-conduct exception applies ' "when ... the statute contemplates a continuous course of conduct of a series of acts over a period of time" [citation].' [Citation.]  For example, where the defendant is charged with one count of continuous sexual abuse of a child (… § 288.5),

16

even if based on a series of acts over time, a unanimity instruction is not required." (*Lueth*, at p. 196.)

"Second, the continuous-course-of-conduct exception applies when (1) 'the acts are so closely connected in time as to form part of one transaction,' (2) 'the defendant tenders the same defense or defenses to each act,' and (3) 'there is no reasonable basis for the jury to distinguish between them. [Citations.]' [Citation.] 'This exception " 'is meant to apply not to all crimes occurring during a single transaction but only to those "where the acts testified to are so closely related in time and place that the jurors reasonably must either accept or reject the victim's testimony in toto." ' " ' " (*Lueth, supra*, 206 Cal.App.4th at p. 196.)

However, it is not "clear that this is truly an *exception*." (*Lueth, supra*, 206 Cal.App.4th at p. 196.) Rather, more accurately, "in this situation, a unanimity instruction is required, but the failure to give one is harmless. (See *People v. Arevalo–Iraheta* (2011) 193 Cal.App.4th 1574, 1589 ['the omission of a unanimity instruction [is] harmless if the record reveals "no rational basis ... by which the jury could have distinguished between [the acts which would constitute the offenses]" '].)" (*Lueth*, at p. 196.) Stated another way, the failure to give a unanimity instruction is harmless "where the defendant offered the same defense to all criminal acts, and 'the jury's verdict implies that it did not believe the only defense offered.' " (*Hernandez, supra*, 217 Cal.App.4th at p. 577.)

Here, J.I. testified to being slapped, punched, strangled, and bitten twice by his mother. Each action was merely an alternate way of proving the element that Ayala "willfully inflicted cruel or inhuman physical punishment or injury on a child," rather than each act constituting a separate chargeable offense. The multiple assaultive acts constituted the single criminal event of

17

Ayala inflicting corporal injury on J.I.  In other words, the acts formed a continuous course of conduct and one transaction.  Thus, the jury was not required to agree on one underlying act, and no unanimity instruction was necessary in this case.

IV

*The Electronic Search Condition Is Not Reasonable*

Ayala's final contention is the court erred by imposing a probation condition that required her to submit to searches of her computers, recordable media, and electronic devices.[4]  She argues this condition is not reasonable under *Lent* and is also unconstitutionally overbroad.  The Attorney General argues the condition satisfies the requirements of *Lent*.  However, he tacitly concedes that "the term is overbroad in terms of [Ayala]'s constitutional rights under the Fourth Amendment, and her privacy rights" by presenting no argument against this conclusion.

A

*Legal Standards*

"The Legislature has placed in trial judges a broad discretion in the sentencing process, including the determination as to whether probation is appropriate and, if so, the conditions thereof."  (*Lent, supra*, 15 Cal.3d at p. 486.)  Under this grant of discretion, a trial court may impose any

---

[4]     The probation condition states in full that Ayala shall "[s]ubmit person, vehicle, residence, property, personal effects, computers, and recordable media including electronic devices to search at any time with or without a warrant, and with or without reasonable cause, when required by [a probation officer] or law enforcement officer."  At sentencing, Ayala's counsel asked the court to "delete computers, recordable media, and electronic devices from the Fourth waiver or narrowly tailor that Fourth waiver to ensure compliance with the criminal protective order that will be sought by the prosecution."  The court denied the request without explanation.

"reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer." (§ 1203.1, subd. (j).) "[W]e ' "review conditions of probation for abuse of discretion." ' [Citation.] Specifically, we review a probation condition 'for an indication that the condition is "arbitrary or capricious" or otherwise exceeds the bounds of reason under the circumstances.' " (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118 (*Ricardo P.*).)

In *Lent*, the Supreme Court adopted a three-part test to determine whether a probation condition is reasonable and, therefore, statutorily valid. " 'Generally, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality....' [Citation.]" [Citation.] This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term.' (*People v. Olguin* (2008) 45 Cal.4th 375, 379, quoting *Lent, supra*, 15 Cal.3d at p. 486.) Furthermore, '[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad.' (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) 'The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such

matters is impossible, and that practical necessity will justify some infringement.' " (*In People v. Appleton* (2016) 245 Cal.App.4th 717, 723.)

B

*Analysis*

The People do not dispute that the first two prongs of the *Lent* test are satisfied. Therefore, we focus our attention on the third prong—whether the electronic device search condition is reasonably related to future criminality. (*Lent, supra*, 15 Cal.3d at p. 486.) Our inquiry on this subject is guided by the Supreme Court's decision in *Ricardo P., supra*, 7 Cal.5th 1113.

In that case, a juvenile defendant admitted two counts of felony burglary and made statements to his probation officer indicating he may have been under the influence of marijuana when he committed the offense. (*Ricardo P., supra*, 7 Cal.5th at pp. 1116–1117.) The juvenile court placed the defendant on probation and, as a condition of probation, required him to submit his electronic devices, including passwords, to warrantless searches. (*Ibid*.) Although there was no indication the defendant used an electronic device or social media in connection with the burglaries, the juvenile court imposed the electronic device search condition to monitor his compliance with other probation conditions prohibiting his use or possession of illegal drugs. (*Id*. at pp. 1115, 1122.) The juvenile court justified the electronic device search condition on grounds " 'that minors typically will brag about their marijuana usage or drug usage, particularly their marijuana usage, by posting on the Internet, showing pictures of themselves with paraphernalia, or smoking marijuana. It's a very important part of being able to monitor drug usage and particularly marijuana usage.' " (*Id*. at p. 1117.) On appeal,

20

the Supreme Court concluded this rationale did not justify the broad electronic device search condition.

As the Supreme Court explained, "*Lent*'s requirement that a probation condition must be ' "reasonably related to future criminality" ' contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Ricardo P., supra*, 7 Cal.5th at p. 1122.) In the case of an electronic search condition, the probationer's privacy interest is "significantly burden[ed]" due to the sheer scope and nature of information stored on modern electronic devices. (*Id*. at p. 1123.) This heavy burden on the probationer's privacy interests does not render all electronic device search conditions categorically invalid. (*Id*. at pp. 1128–1129.) However, it requires a "correspondingly substantial and particularized justification" for the condition. (*Id*. at p. 1126.) There was no such justification in *Ricardo P.*, given that "nothing in the record suggest[ed] that [the defendant had] ever used an electronic device or social media in connection with criminal conduct." (*Id*. at p. 1122.) In the absence of a proportional justification for the condition, the condition was not "reasonably related to future criminality and [was] therefore invalid under *Lent*." (*Id*. at p. 1128.)

The facts here are similar to those at issue in *Ricardo P.* and compel us to conclude the electronic search condition imposed on Ayala is not reasonably related to her future criminality. Like the condition struck in *Ricardo P.*, the condition challenged in this case imposes a heavy burden on the probationer's privacy interests because it permits a probation officer or law enforcement officer, "at any time with or without a warrant," to conduct searches of the probationer's computer and cell phone. Further, as in *Ricardo P.*, there is no indication that Ayala used a computer or cell phone to

21

engage in criminal conduct. (*Ricardo P., supra*, 7 Cal.5th at p. 1116.) Nor is there any indication in the record that she will use such devices in connection with a criminal offense. On this record, we conclude the burden the electronic device search condition imposes on Ayala is substantially disproportionate to the state interests furthered by the condition.

The Attorney General contends the broad electronic device search condition is justified because the probation officer who evaluated Ayala recommended a term of imprisonment and doubted her ability to comply with the terms of probation. In addition, the probation officer's report stated Ayala told the officer she wanted J.I. to live with her, but the court imposed a criminal protective order preventing Ayala from contacting J.I. for four years. Thus, the Attorney General argues the electronic search condition is appropriate to ensure Ayala is not contacting J.I. by electronic means in violation of the protective order. However, there was no evidence showing that Ayala's criminal conduct—physical child abuse—was related in any way to her use of electronic devices or computers. Thus, we cannot conclude that the unconstrained electronic search condition was sufficiently related to Ayala's potential future criminality under *Lent*'s third prong.[5]

As the Attorney General suggests, on remand the trial court may impose a condition that Ayala's electronic devices are subject to search only with respect to "any modes and means of possibly contacting [J.I.], such as social media platforms, applications, email, text messaging, and phone functions," and excluding medical, legal, or financial records. As the Attorney General states, a more limited term could both serve the state's legitimate

---

[5] Because we conclude the electronic search condition is unreasonable under the *Lent* test, we do not consider whether it is unconstitutionally overbroad.

interest in preventing Ayala from violating the criminal protective order while also limiting any infringement on her privacy rights.

DISPOSITION

The judgment is reversed in part and the matter is remanded with instructions to strike the portion of Ayala's probation condition requiring her to submit her "computers, and recordable media including electronic devices" to warrantless searches. The trial court may consider whether to impose a more targeted or alternative condition consistent with this opinion and *Ricardo P., supra*, 7 Cal.5th 1113. The judgment is otherwise affirmed.


McCONNELL, P. J.

WE CONCUR:


BUCHANAN, J.


KELETY, J.